Aaron **GEISLER**, an Infant Under the Age of Eighteen, Who Sues By His Parents, Guardians and Next Friends, Herbert A. **GEISLER** and Cynthia A. Geisler; and Herbert A. Geisler and Cynthia A. Geisler, Individually, Plaintiffs,

v.

**WYETH LABORATORIES, A DIVISION OF AMERICAN HOME PRODUCTS CORPORATION, a Foreign Corporation; and Wyeth Laboratories, Inc., a Foreign Corporation, Defendant.**

No. 88–1094–K.

United States District Court, D. Kansas.

June 8, 1989.

Andrew W. Hutton, Michaud, Hutton & Bradshaw, Wichita, Kan., for plaintiffs.

Debra J. Arnett and Alvin Herrington, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., and Albert J. Knopp, Baker & Hostetler, Cleveland, Ohio, for defendant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

Plaintiffs brought this action to recover damages for personal injuries allegedly sustained by Aaron Geisler as the result of his inoculation with a DTP vaccine manufactured by defendant Wyeth Laboratories ("Wyeth"). Plaintiffs are represented by the law firm of Michaud, Hutton & Bradshaw ("Michaud firm"), which has regularly represented similarly situated claimants before this court. Defendant Wyeth is, and has been, regularly represented by the law firm of McDonald, Tinker, Skaer, Quinn & Herrington ("McDonald, Tinker").

Recently, Randall Fisher joined the Michaud firm as an associate attorney. Until 1987, Mr. Fisher was a partner in the McDonald, Tinker firm. As a consequence, defendant Wyeth has moved to disqualify the Michaud firm from representation of the plaintiffs, asserting conflict of interest resulting from the firm's employment of Fisher.

The court scheduled an evidentiary hearing on defendant's motion on June 1, 1989. Before proceeding, however, the court reviewed the entire scenario which has transpired between the litigants and their attorneys, and suggested proposed conclusions to be made without the benefit of an evidentiary hearing. The parties were permitted time to discuss the court's suggestions, after which both sides agreed that no evidentiary hearing or further argument was necessary. The court subsequently entered its ruling from the bench.

Consistent with its previous statements and for the additional reasons set forth herein, the court finds that while Randall Fisher is disqualified from representing the plaintiffs in this litigation, the entire Michaud firm need not be disqualified because Fisher has been effectively screened from participation in this litigation.

### Findings of Fact

Randall Fisher joined the McDonald, Tinker law firm on May 18, 1981. Mr. Fisher was a director and shareholder in the McDonald, Tinker firm from January 1, 1985 until September 30, 1987, when he left the firm to assume duties as a Sedgwick County District Court Judge. Throughout his employment with the McDonald, Tinker firm, Fisher regularly attended weekly litigation meetings. The general purpose of these meetings was to discuss and assign new cases, deal with scheduling conflicts,

and maintain the trial calendar for the firm. On occasion, the meetings included discussions of a confidential nature regarding factual and legal matters on a particular file.

Mr. Fisher also attended directors' meetings after he became a director in 1985. These meetings were held approximately once a month and generally did not involve substantive discussion of cases. At times, however, trial and defense strategies were discussed at directors' meetings.

During the course of his employment with McDonald, Tinker, Mr. Fisher, along with attorney Debra Arnett, was assigned to represent Wyeth in a case entitled *Taylor v. Wyeth Laboratories, et al.* This litigation involved personal injuries allegedly arising out of the use of oral contraceptives manufactured by Wyeth. On October 3 and 4, 1984, Fisher and Arnett visited the Wyeth facilities in Radnor, Pennsylvania, and met with several of its representatives, including members of the legal department and Mahlon Bierly, M.D., the medical director for Wyeth. The purpose of this trip was client development and orientation to the defendant's place of business.

At the time Fisher and Arnett traveled to Wyeth's facilities, Wyeth had not yet decided whether to retain the services of McDonald, Tinker for purposes of DTP litigation. One of the reasons Fisher and Arnett visited Wyeth's facilities was to demonstrate to Wyeth that their firm had the resources and ability to handle Wyeth's litigation.

Fisher worked in excess of 30 hours on the *Taylor* case and his efforts included preparation and review of discovery responses to interrogatories and requests for production propounded by plaintiffs. Mr. Fisher last provided legal services on the *Taylor* case in January of 1985. McDonald, Tinker's representation of Wyeth in the case continued throughout Fisher's tenure and until the present date.

On April 22, 1985, the Michaud firm filed an action entitled *Michelle Graham, et al. v. Wyeth Laboratories* (hereafter referred to as "*Graham*"), Case No. 85–1481–K, in the United States District Court for the District of Kansas. This drug litigation alleged personal injuries arising from a DTP immunization. The McDonald, Tinker firm was assigned the defense of the litigation. Although Fisher was not assigned to this case, he was a director and shareholder of the McDonald, Tinker firm from the time the case was filed until approximately 14 days before the jury entered its verdict. Wyeth has appealed from an adverse judgement in *Graham* and three appeals are currently pending before the Tenth Circuit Court of Appeals.

In August, 1985, the McDonald, Tinker firm was assigned the defense of a potential claim on behalf of Michael Gilbreth. On February 11, 1986, the Michaud firm filed an amended complaint asserting a claim against Wyeth in an action entitled *Gilbreth v. Lederle, et al.*, Case No. 85–1482–K, pending in the United States District Court for the District of Kansas. This drug litigation alleged personal injuries from a DTP immunization. The plaintiff's claims against Wyeth were dismissed on November 7, 1986. Mr. Fisher was not assigned to the representation of Wyeth in this case, but he was a director and shareholder throughout the pendency of this litigation.

Also in August, 1985, the Michaud firm filed an action entitled *Jesse King v. Stephen Schaum, et al.*, Case No. 85 C 2742, in the Sedgwick County District Court. This litigation alleged personal injuries from a DTP immunization. The plaintiff's allegations against Lederle Laboratories (the manufacturer of the DTP vaccine involved) were substantially the same as the allegations asserted against Wyeth in the above-referenced cases. Mr. Fisher represented defendant Dr. Steven Schaum in that litigation.

On December 18, 1985, the Michaud firm filed an action entitled *Brandon Hagan v. Wyeth Laboratories, et al.*, Case No. 85–6133–K, in the United States District Court for the District of Kansas. McDonald, Tinker was assigned the defense of this case, which again involved personal injuries allegedly resulting from a DTP immuniza-

tion. The plaintiff's claims against Wyeth were dismissed on August 29, 1988. Mr. Fisher was not assigned to this case, but was a director and shareholder from the filing of this litigation until his resignation on September 30, 1987.

On April 3, 1986, the Michaud firm filed an amended petition in an action entitled *Andrew Morris, et al. v. Wyeth Laboratories, et al.*, Case No. 85 C 2600, in Sedgwick County District Court. The McDonald, Tinker firm was assigned to the defense of this litigation, which again alleged personal injuries from a DTP immunization. The plaintiffs' claims against Wyeth were dismissed on October 21, 1986. While Mr. Fisher was not assigned to this case, he was a director and shareholder of the McDonald, Tinker firm throughout the pendency of this litigation.

On February 16, 1988, the Michaud firm filed the instant litigation, *Aaron Geisler, et al. v. Wyeth Laboratories*, No. 88–1094–K. This litigation also alleges personal injuries arising from DTP immunization.

Fisher was defeated in the 1988 primary elections for his judicial position and his term ended January 9, 1989. He decided to return to private practice and this conflict of interest issue arose as a consequence.

Fisher interviewed with a number of firms, and on February 21, 1989, Fisher contacted Debra Arnett of the McDonald, Tinker firm and requested that the firm determine if any conflicts of interest existed if Fisher were to join any of four law firms in Wichita, one of which was the Michaud firm. An authorized representative of Wyeth subsequently advised the McDonald, Tinker firm that Wyeth would not waive the conflict of interest or consent to the continued representation of Michelle Graham and Aaron Geisler by the Michaud firm in the event Fisher associated with that firm. Debra Arnett advised Fisher of Wyeth's decision on February 28, 1989, the same date on which Fisher accepted employment with the Michaud firm.

On March 1, 1989, Fisher commenced employment with the Michaud firm. In a letter dated March 1, 1989, the partners of the Michaud firm and Mr. Fisher stated that although Mr. Fisher assisted in representing Wyeth in an oral contraceptive case, he "had no contact with the Wyeth DPT defense cases, and knows nothing of them." The letter further stated:

As to those cases in which Randy has had no involvement, we intend to leave the files in the general filing area, and to continue with representation of our clients in the usual way. However, to avoid any appearance of impropriety, Randy will not work on or have anything to do with those clients or their files. He will be specifically instructed to avoid all contact with the files and to avoid discussion of the matters with any of the other lawyers in our office.

(Def.'s Ex. E.)

On March 20, 1989, plaintiffs brought a motion for declaratory determination in which they requested a pretrial determination on the issue of possible disqualification of the Michaud firm as a result of its recent employment of Randy Fisher. Defendant subsequently moved to strike the plaintiffs' motion, pointing out that this court's authority to disqualify attorneys on the ground of conflict of interest is invoked only if a former client moves for disqualification. The court agreed, and on April 10, 1989, defendant moved for disqualification of the Michaud firm on conflict of interest grounds.

*Conclusions of Law*

■ Before considering the various contentions of the parties, it should be noted that the party moving for disqualification has the initial burden of proving that a conflict of interest exists. *See, e.g., Satellite Financial Planning Co. v. First National Bank of Wilmington*, 652 F.Supp. 1281, 1283 (D.Del.1987); *Dewey v. R.J. Reynolds Tobacco Co.*, 109 N.J. 201, 536 A.2d 243, 253 (1988).

In support of its motion to disqualify the Michaud firm from representing plaintiffs in this action, defendant relies primarily upon the Model Rules of Professional Conduct ("MRPC"). The Supreme Court of Kansas adopted the MRPC on March 1, 1988 as "general standards of conduct and

practice required of the legal profession in Kansas." MRPC Prefatory Rule (1988 Kan.Ct.R.Annot. 184). While these rules supersede and supplement the Code of Professional Responsibility ("CPR"), Canons 1 through 9 of the CPR were preserved "as general statements of required professional conduct." *Id.* Further, the MRPC and CPR govern the issues in this case pursuant to Rule 407 of the Local Rules of the District of Kansas.

### (a) *Disqualification of Fisher*

If a conflict of interest exists in this case, the conflict originated with Fisher. Thus, before the court can consider whether or not the Michaud firm is disqualified, it must determine whether Fisher himself would be disqualified from representing the plaintiff in this case. An analysis of this issue begins with examination of MRPC 1.9, which provides:

**RULE 1.9 Conflict of Interest: Former Client**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

If Fisher is to be disqualified under this provision, four requirements must be met. First, he must have had an attorney-client relationship with Wyeth. Second, the present litigation must involve the same matter Fisher worked on for Wyeth, or a "substantially related" matter. Third, the interests of the present client (Geisler) must be materially adverse to the interests of the former client, Wyeth. Finally, Wyeth must not have consented to the rep-

resentation after consultation. *Nemours Foundation v. Gilbane, Aetna, Federal Ins. Co.*, 632 F.Supp. 418, 422 (D.Del.1986).

In this case, it is undisputed that Fisher represented Wyeth in *Taylor v. Wyeth Laboratories*, a products liability action in which the plaintiff alleged personal injuries resulting from ingestion of an oral contraceptive manufactured by Wyeth. Thus, Fisher clearly had an "attorney-client relationship" with Wyeth. It is also undisputed that the interests of the plaintiff in this action are materially adverse to the interests of Wyeth and that Wyeth has not consented to the Michaud firm's representation. Accordingly, the question remaining is whether the present litigation involves the same matter or is "substantially related" to the litigation in which Fisher represented Wyeth.

Since Fisher represented Wyeth in an oral contraceptive case, it is clear that the instant litigation, which involves a DTP immunization, is not the "same" matter upon which Fisher represented Wyeth. Defendant makes a strong argument, however, that Fisher's representation of Wyeth in the oral contraceptive litigation is "substantially related" to this litigation, and thus, Fisher would be personally disqualified from representing plaintiff in this action.

Defendant points out that in connection with Fisher's representation of Wyeth in the *Taylor* case, Fisher traveled to the client's facilities in Pennsylvania and interviewed various Wyeth personnel, including Wyeth's medical director, Dr. Mahlon Bierly. Defendants contend that through this interview, Fisher had an opportunity to obtain information concerning Wyeth's policies, procedures, and activities involving its products and an opportunity to learn of Wyeth's strategies toward the defense of product liability claims.[1] Defendant reasons that such information "transcends product lines" and is substantially related to this DTP litigation. (Memo. in Support of Def.'s Motion for Disqualification, p. 14.)

1. In fact, in the fall of 1987, Dr. Bierly appeared in this court as a witness for Wyeth in the jury trial of *Michelle Graham, et al. v. Wyeth Laboratories,* Case No. 85–1481.

The Tenth Circuit has held that in considering the merits of a disqualification motion, a "substantial relationship" exists between a pending suit and the matter in which the challenged attorney previously represented the client "if the *factual circumstances of the two representations are similar or related.*" *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir.1985) (quoting *Compare Trust Corp. v. Piper Aircraft Corp.,* 701 F.2d 85, 87 [9th Cir. 1983]) (emphasis added).[2]

■ The court finds the litigation in *Taylor* parallels the litigation in the instant case in many respects. Taylor alleges personal injuries arising from the use of a prescription drug manufactured by Wyeth; Geisler alleges injuries resulting from a DTP vaccine manufactured by Wyeth. Both cases allege strict liability in tort and negligence. More importantly, Wyeth's medical director, whom Fisher personally interviewed, plays a key role in both types of cases. The court therefore finds that under MRPC 1.9, Fisher's former representation of Wyeth in the oral contraceptive litigation is "substantially related" to the instant litigation.

Once a substantial relationship has been found, a presumption arises that a client has revealed facts to the attorney which require his disqualification. The Tenth Circuit has held this to be an irrebuttable presumption. *Smith v. Whatcott,* 757 F.2d at 1100. Accordingly, the court finds that Fisher is prohibited from representing the plaintiff in this case.

### (b) *Disqualification of Michaud firm*

The court's determination that Fisher may not represent the plaintiffs in this litigation raises the question whether Fisher's disqualification prohibits the entire Michaud firm from representing plaintiffs herein. MRPC 1.10 governs the question of when an attorney's disqualification is

"imputed" to other members of a law firm. That rule provides in pertinent part:.

**RULE 1.10 Imputed Disqualification: General Rule**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), *1.9* or 2.2.

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and *about whom the lawyer had acquired information* protected by Rules 1.6 and 1.9(b) that is material to the matter.

(Emphasis added.)

■ Rule 1.10(a) applies a per se rule of imputed disqualification to lawyers currently practicing together in close association, without regard to whether there has been an actual sharing of client confidences. *Dewey v. R.J. Reynolds Tobacco Co.,* 109 N.J. 201, 536 A.2d 243, 251 (1988). Since a law firm may not represent a client when any member of the firm practicing alone would be prohibited from doing so and the court has already determined that Fisher would be prohibited under Rule 1.9(a) from representing the plaintiff in this litigation, under Rule 1.10(a) Fisher's disqualification is imputed to the Michaud firm.

Before proceeding in its analysis, the court notes that defendant argues the Michaud firm must also be disqualified under Rule 1.10(b). Under this rule, if Fisher "acquired information," i.e., obtained actual knowledge, about Wyeth as the result of either his *or* his former firm's representation of Wyeth in the same or substantially related matter, then the Michaud firm may not represent the plaintiff in this litigation. Defendant contends that Fisher "acquired

**2.** The "substantiality" requirement of MRPC 1.9(a) corresponds to the test for a conflict of interest which exists under the Code. Canon 4 requires a lawyer to preserve the secrets and confidences of his client, and instructs a lawyer

not to accept employment against a former client where the matter in controversy is "substantially related to the subject-matter of his earlier representation." *Field v. Freedman,* 527 F.Supp. 935, 941 (D.Kan.1981).

information" as a result of (1) his position as a partner in the McDonald, Tinker firm and his access to DTP litigation files; (2) his participation in weekly litigation meetings and periodic directors' meetings; and (3) his representation of Dr. Schaum in the DTP litigation. Consequently, defendant suggests the entire Michaud firm must be disqualified.

Plaintiffs respond that Fisher had no "actual knowledge" regarding DTP litigation handled by the McDonald, Tinker firm. Plaintiffs allege that Fisher had no opportunity to obtain such knowledge because the McDonald, Tinker firm formed a "Chinese wall" to prevent Fisher from access to its DTP files. The "wall" was allegedly formed at the request of Wyeth when Fisher represented Dr. Schaum in *King v. Schaum, et al.*, a DTP case against Lederle Laboratories, Dr. Schaum and others. Defendant, however, strongly disputes the existence of such a "wall" and claims that no institutional mechanisms to prevent Fisher's access to the Wyeth DTP litigation were ever discussed, adopted or implemented by the firm.

While the facts are controverted with respect to the question of Fisher's access to DTP files and the existence of any actual knowledge on his part regarding the DTP litigation, the court finds it unnecessary to resolve this issue. As discussed above, Fisher's representation of Wyeth in the *Taylor* case conflicted Fisher and required his disqualification under Rule 1.9. Further, pursuant to Rule 1.10(a), Fisher's disqualification is imputed to the Michaud firm.

### (c) *"Chinese Wall" Exception*

■ The court's inquiry does not necessarily end, however, with the finding of imputed disqualification. Rather, the MRPC suggests a "rule based on a functional analysis is more appropriate for determining the question of vicarious disqualification." MRPC, Comments to Rule 1.10. The Tenth Circuit has recognized that this "functional approach" to the issue of firm disqualification may include the adoption of what has been referred to as the "Chinese

Wall" exception. *Smith v. Whatcott*, 757 F.2d at 1101–02. Under this exception, firm-wide disqualification is unnecessary if the firm can prove that the attorney involved in the first matter has been effectively screened from financial interest and participation in the second case.

■ In *Smith v. Whatcott*, the Tenth Circuit stated that the exception may apply when a firm has "effectively screened the challenged attorney from actual participation in the case and inadvertent disclosure of confidential communication." 757 F.2d at 1101. The court further noted, however, that it "need not decide whether to adopt this exception in an appropriate case" because in the case before it, "no 'specific institutional mechanisms' designed to prevent inadvertent disclosure were in place when the firm accepted the case." *Id.* (quoting *Schiessle v. Stephens*, 717 F.2d 417, 421 (7th Cir.1983)).

Thus, while the Tenth Circuit did not specifically adopt or approve of the "Chinese Wall" exception to the per se rule of imputed disqualification, the court indicated that under the proper circumstances, it might consider adopting such an exception. Specifically, a law firm must have had in place, at the time of hiring the conflicted attorney, firm-wide policies promulgated to prevent the inadvertent flow of confidential communication.

In the instant case, defendant argues the exception cannot apply because the Michaud firm specifically stated in a letter to the McDonald, Tinker firm that it intended to maintain its DTP files in the general filing area and "continue with representation of clients in the usual way." (Def.'s Ex. E, p. 2.) This argument ignores, however, the Michaud firm's explicit directions to Fisher to "avoid all contact with the [DTP] files and to avoid discussion of the matters" with all attorneys in the office. *Id.* Moreover, the letter stating the limitations to be placed upon Fisher was written on March 1, 1989, the date Fisher commenced employment with the Michaud firm.

Further, the court accepts the representations of Andrew Hutton and Randall

Fisher that as of this moment no communications have transpired, nor has Fisher had access to any file pertaining to Wyeth DTP cases.

Under these circumstances, the court concludes that screening mechanisms have been in place from the commencement of Fisher's association with the Michaud firm, and these mechanisms are sufficient to overcome the presumption of imputed disqualification of the Michaud firm. Further, the court directs that henceforth every member of the Michaud firm shall be restrained from either communicating, either orally or in writing, with Fisher as to any case or matter relating to Wyeth DTP litigation. Further, Fisher is not to have access to any file in connection therewith. Finally, Fisher is admonished from communicating with any attorney in the Michaud firm about the Wyeth cases.

In so finding, the court recognizes the practical impact of this decision on the underlying litigation and has attempted to address and reconcile the needs of all parties involved. Because of the imposition of the "Chinese Wall," Wyeth can rest assured that no confidential information will make its way to members of the Michaud firm. Plaintiffs herein will be permitted their choice of legal counsel. Further, Mr. Fisher will not be unreasonably prevented from forming a new association, and the Michaud firm will have the benefit of Mr. Fisher's capable representation in many matters, none of which will relate to Wyeth DTP litigation.

Notwithstanding the foregoing findings and directives, all proceedings in this case remain stayed pending decision of the Tenth Circuit Court of Appeals as pertains to the propriety of the same.

In this regard, the court finds that an interlocutory appeal by defendant Wyeth is permissible pursuant to 28 U.S.C. § 1292(b). The court finds this order involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation.

IT IS ACCORDINGLY ORDERED this 8 day of June, 1989, that defendant's motion to disqualify plaintiffs' counsel is hereby denied.

IT IS FURTHER ORDERED that defendant is permitted to take an interlocutory appeal of this order pursuant to 28 U.S.C. § 1292(b), and all proceedings in this case are stayed pending decision of the Tenth Circuit Court of Appeals.