**Michelle GRAHAM, an infant under the age of eighteen who sues by HER parents, guardians and next friends, Charles GRAHAM and Tammy Graham, Plaintiff–Appellee,**

v.

**WYETH LABORATORIES DIVISION OF AMERICAN HOME PRODUCTS CORPORATION, Defendant–Appellant.**

**Nos. 88–1337, 88–2302, 89–3066 and 89–3121.**

United States Court of Appeals, Tenth Circuit.

June 25, 1990.

Wayne C. Dabb, Jr. of Baker & Hostetler, Cleveland, Ohio (Debra J. Arnett and Alvin D. Herrington of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., Wichita, Kan., Albert J. Knopp, Mary M. Bittence, and J. Jeffrey Zimmerman of Baker & Hostetler, Cleveland, Ohio, James M. Clark and Fred M. Winner of Baker & Hostetler, Denver, Colo., and Hedy M. Powell of Wyeth–Ayerst Laboratories, Philadelphia, Pa., with him on the brief), for defendant-appellant.

Marlys A. Marshall of Michaud & Hutton, Wichita, Kan. (Andrew W. Hutton of Michaud & Hutton, Wichita, Kan., and Ted M. Warshafsky of Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch, Milwaukee, Wis., with her on the brief), for plaintiff-appellee.

---

Before SEYMOUR, MOORE, and GARTH,[*] Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant Wyeth Laboratories moved pending appeal to disqualify plaintiff Michelle Graham's counsel from further representing her in this products liability litigation because of a purported conflict of interest. We disqualified counsel at oral argument and announced our intention to state our analysis in a published opinion. Upon further study, we now hold that dispositive factual issues remain unresolved on the disqualification issue, necessitating an evidentiary hearing. Because we have reversed on the merits of the appeal in a separate opinion,[1] we remand the disqualification motion to the district court for further proceedings in conjunction with the new trial we have ordered on the merits.

I.

The underlying dispute arose from Michelle Graham's innoculation with Wyeth's DPT vaccine, which allegedly caused her severe injuries. Graham retained the law firm of Michaud, Hutton & Bradshaw (Michaud), along with co-counsel Warshafsky, Rotter, Tarnoff, Gesler, Reinhardt & Bloch (Warshafsky), to represent her. Wyeth retained the law firm of McDonald, Tinker, Skaer, Quinn & Herrington, P.A. (McDonald, Tinker), along with Baker & Hostetler, to defend it.

In April 1985, Graham filed a diversity action against Wyeth in the Kansas federal district court alleging negligence and strict liability. The case proceeded to trial, and the jury entered its verdict in favor of Graham. Wyeth appealed on various grounds. While the appeal was pending, Randall Fisher, previously a litigation partner with Wyeth's counsel McDonald, Tinker, joined the Michaud firm as an associate. Wyeth refused to waive any potential conflict created by Fisher's association with the Michaud firm. Instead, Wyeth filed the instant motion under Fed.R.App.P. 28 to disqualify the entire Michaud firm from any future representation of Michelle Graham in her DPT case against Wyeth.

Wyeth argued in its motion that Randall Fisher's involvement in various matters for Wyeth while he was at McDonald, Tinker not only requires Fisher's disqualification, but that Fisher's conflict should be imputed to the entire Michaud firm. In support of this argument Wyeth referred us to the district court's conclusions of fact in *Geisler ex rel. Geisler v. Wyeth Labs.*, 716 F.Supp. 520 (D.Kan.1989), a similar DPT case involving a different plaintiff in which Michaud and McDonald, Tinker are again on opposite sides of the counsel table. As in the instant motion, Wyeth sought disqualification of Michaud in *Geisler* because of Fisher's prior involvement while at McDonald, Tinker. Indeed, both parties agree that the facts of both cases are in all pertinent respects identical.

The court in *Geisler* suggested to the lawyers that they agree on the basic facts in an effort to avoid an evidentiary hearing. The parties did so, and the court made findings based on those facts. In lieu of repeating the somewhat lengthy conclusions of fact in *Geisler*, we refer the reader to 716 F.Supp at 521–23 and incorporate the factual conclusions set out there into this opinion. On the basis of those facts, the district court in *Geisler* ruled that Randall Fisher is disqualified from representing the plaintiff against Wyeth. *See id.* at 521. In so holding, the court found that the *Geisler* DPT litigation was "substantially related" to matters Fisher had worked on for Wyeth while at McDonald, Tinker. The court then concluded that "[o]nce a substantial relationship has been found, a[n irrebuttable] presumption arises that a client has revealed facts to the attorney which require his disqualification."[2]

[*] The Honorable Leonard I. Garth, Senior United States Court of Appeals Judge for the Third Circuit, sitting by designation.

1. *See Graham ex rel. Graham v. Wyeth Labs.*, 906 F.2d 1399 (10th Cir.1990).

2. After the court in *Geisler* issued its ruling, it certified the issue for appeal. Wyeth then filed a motion for an interlocutory appeal under 28 U.S.C. § 1292(b) (1988). Geisler subsequently moved to remand the appeal to the district court

*Id.* at 525 (citing *Smith v. Whatcott,* 757 F.2d 1098, 1100 (10th Cir.1985)).

In determining whether Fisher's disqualification should extend to the entire Michaud firm, the court invoked Model Rule of Professional Conduct 1.10(a), *see infra* at 1421, applicable to lawyers in the same firm, which operates to disqualify the entire firm from representing a client if any one lawyer practicing alone would be so disqualified. Because Fisher individually was disqualified, the court held that the entire Michaud firm was also disqualified unless it could show that it had adequately screened Fisher from involvement in the *Geisler* DPT case. The court then found that Fisher had been adequately screened, and concluded that Michaud could continue representing Geisler. *See Geisler,* 716 F.Supp. at 527.

After the instant motion had been fully briefed and just prior to oral argument on Wyeth's appeal, the Kansas Supreme Court decided *Parker v. Volkswagenwerk Aktiengesellschaft,* 245 Kan. 580, 781 P.2d 1099 (1989), another case concerning Randall Fisher's move from McDonald, Tinker to Michaud. In *Parker,* the court held that Rule 1.10(b), *see* infra at 1421, rather than Rule 1.10(a) as applied in *Geisler,* provides the correct analysis when a lawyer changes firms and disqualification of the lawyer's newly adopted firm is sought. *See* 781 P.2d at 1106. The court held further that before the lawyer's new firm is disqualified, the court must determine as a factual matter whether the moving lawyer acquired actual knowledge of client confidences. *See id.* Finally, the Kansas court rejected screening as a means by which an otherwise disqualified firm may continue with its representation. *See id.* 781 P.2d at 1106–07.

At oral argument, we asked counsel for both sides to address the impact of *Parker* on the instant motion and to state why the facts in *Geisler* should not be adopted for purposes of deciding the identical issue in the instant motion. After hearing argument on the disqualification issues, we recessed temporarily to consider how to proceed with oral argument on the merits of the appeal. We noted that in addition to being represented at oral argument by the Michaud firm, Graham was also represented by co-counsel Ted Warshafsky, who informed us that he was prepared to argue the merits of the appeal. On the basis of the *Geisler* conclusions of fact, but without briefing on the impact of *Parker,* we determined that the most prudent course under the circumstances would be to issue a bench ruling disqualifying Michaud from representing Graham in oral argument, pending issuance of a formal explanatory ruling after further study of the newly-issued *Parker* decision.

## II.

We start our analysis with the Model Rules of Professional Conduct adopted by the Kansas Supreme Court as "general standards of conduct and practice required of the legal profession in Kansas." Kan. S.Ct. Rule 226, Prefatory Rule, Kan. Court Rules & Proc. (West 1990); *see also* Rule 407 of the Local Rules of the District of Kansas, Kan. Court Rules & Proc. (West 1990) (adopting Kansas Supreme Court version of Model Rules as standards of professional conduct in Kansas federal district court). The Kansas Supreme Court has also adopted a modified form of the comments accompanying the Model Rules to the extent that they are not inconsistent with the Rules themselves or the statutory or case law of Kansas. *See* Kan.S.Ct.Rule 226, Prefatory Rule.

Rule 1.10, concerning the disqualification of an entire firm, provides in part as follows:

"(a) *While lawyers are associated in a firm,* none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2.

"(b) *When a lawyer becomes associated with a firm,* the firm may not knowingly represent a person in the same or a substantially related matter in which

for further proceedings. These motions currently are under submission.

that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

"(c) *When a lawyer has terminated an association with a firm,* the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter."

Kan.S.Ct.Rule 226, Rule 1.10 (emphasis added). The emphasized language suggests that the analysis differs according to whether the conflicted lawyer remains with the same firm throughout the prior and current representations, or changes firms. The comment to Rule 1.10 states that "[p]aragraph (a) operates only among the lawyers currently associated in a firm. When a lawyer moves from one firm to another, the situation is governed by paragraphs (b) and (c)." *Id.,* comment to Rule 1.10. The emphasized language also indicates that paragraph (b) applies when disqualification of the moving lawyer's new firm is sought, while disqualification of the lawyer's old firm after his departure is controlled by the principles of paragraph (c). Since Wyeth seeks to disqualify Randall Fisher's new firm, Rule 1.10(b) governs our analysis. *See Parker,* 781 P.2d at 1106 (motion to disqualify Michaud because of Randall Fisher's involvement in

adverse party's matter while at McDonald, Tinker "clearly falls under MRPC 1.10(b)").

When parsed into its elements, Rule 1.10(b) will disqualify a lawyer's new firm when: (1) the moving lawyer, or his or her prior firm, had represented a client whose interests are materially adverse to the client at the new firm; (2) the matter in the new firm is the same or substantially related to the previous representation; (3) the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter in the new firm; and (4) the new firm knows of the conflict arising from its representation. The satisfaction of elements (1) and (4) is not in dispute. Michelle Graham's interests are clearly adverse to Wyeth's and Michaud is fully aware of any potential conflict. Elements (2) and (3) call for more analysis.

Element (2) requires that the prior and current representations concern the same or substantially related matters. While Fisher's work for Wyeth at McDonald, Tinker was not on the same matter involved in Michelle Graham's case, Wyeth argues that the matters are "substantially related."[3] Although the term "substantially related" is not defined in either the Rules, the comment, or the Kansas case law, it has acquired the status of a term of art in the general law of attorney conflicts of interest. *See, e.g., Smith,* 757 F.2d at 1100. We have defined this term previously to mean that the " 'factual contexts of the two representations are similar or related.' " *Id.* (quoting *Trust Corp. v. Piper Aircraft Corp.,* 701 F.2d 85, 87 (9th Cir. 1983)).

Applying this test to basically identical facts, the court in the *Geisler* DPT case concluded that:

"[T]he litigation in *Taylor* [4] parallels the litigation in the instant case in many respects. Taylor alleges personal injuries arising from the use of a prescription drug manufactured by Wyeth; Geis-

---

**3.** It is undisputed that Fisher was a member of the McDonald, Tinker firm throughout much of the proceedings below in *Graham,* although Wyeth does not claim that he actually worked on the case.

**4.** In *Taylor v. Wyeth Labs.,* Case No. 84–1474–C (D.Kan), Fisher represented Wyeth in a matter involving an oral contraceptive product. *See* conclusions of fact in *Geisler,* 716 F.Supp. at 522.

ler alleges injuries resulting from a DPT vaccine manufactured by Wyeth. Both cases allege strict liability in tort and negligence. More importantly, Wyeth's medical director, whom Fisher personally interviewed, plays a key role in both types of cases. The court therefore finds that under MRPC 1.9, Fisher's former representation of Wyeth in the oral contraceptive litigation is 'substantially related' to the instant [DPT] litigation."

*Geisler,* 716 F.Supp. at 525. We agree with this analysis, and we believe it is equally applicable to the DPT litigation here in the context of firm-wide disqualification under Rule 1.10(b).[5] Element (2) is therefore satisfied.

Element (3) mandates an inquiry into whether the lawyer acquired information at the old firm protected by Rules 1.6 and 1.9(b) that is material to the matter. Rule 1.6 prohibits revelation without consent of "information relating to representation of a client," while Rule 1.9(b) prohibits its use to a former client's disadvantage. *See* Kan.S.Ct.Rule 226, Rules 1.6 & 1.9(b). The Kansas Supreme Court in *Parker* quoted with approval that portion of the comment explaining the operation of this requirement:

"Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.

"Application of paragraphs (b) and (c) depends on a situation's particular facts. In any such inquiry, the burden of proof should rest upon the firm whose disqualification is sought.

"*Paragraphs (b) and (c) operate to disqualify the firm only when the lawyer involved has actual knowledge of information protected by Rules 1.6 and 1.9(b).* Thus, if a lawyer while with one firm acquired no knowledge of information relating to a particular client of the firm, and that lawyer later joined another firm, neither the lawyer individually nor the second firm is disqualified from representing another client in the same or a related matter even though the interests of the two clients conflict."

*Parker,* 781 P.2d at 1105 (emphasis added) (quoting comment to Rule 1.10).

*Parker,* like *Geisler* and the instant litigation, involved a potential conflict created by Randall Fisher's move from McDonald, Tinker to the Michaud firm. While at McDonald, Tinker, Fisher had performed some legal research for the defendant, Volkswagen, which was to be used in the *Parker* case. *See id.* 781 P.2d at 1103. As in the present case, moreover, Fisher had attended weekly litigation meetings where information relating to representation of Volkswagen could have been discussed. *See id.* 781 P.2d at 1102. Finally, Fisher's wife was the legal assistant who maintained the *Parker* files at McDonald, Tinker and worked on the case daily. Fisher would visit her often in her office and, occasionally, she would take some of the files to the Fisher home to work on them. *Id.* 781 P.2d at 1102.

On the basis of the above, the trial judge in *Parker* disqualified the Michaud firm,

---

**5.** Wyeth argues that our decision in *Smith v. Whatcott,* 757 F.2d 1098 (10th Cir.1985), requires that we disqualify Michaud solely on the basis of the "substantial relationship" between the matters in which Fisher was involved for Wyeth while at McDonald, Tinker and the present case. Our decision in *Smith,* however, arose out of a Utah diversity action involving Utah law firms. The present case, by contrast, arose in Kansas, where the Model Rules of Professional Conduct, and Kansas case law construing them, control.

and the plaintiff brought an interlocutory appeal to the Kansas Supreme Court. The Kansas Supreme Court noted that while both Randall Fisher and his wife testified in the disqualification proceedings in *Parker*, the trial judge made no findings as to whether Randall Fisher actually acquired protected information. The court remanded the disqualification issue to the district court for a "full hearing," reasoning as follows:

"Where a motion to disqualify based on MRPC 1.10(b) has been filed, the district court must have a full hearing to determine whether the attorney in question acquired material and confidential information during the course of his former employment. *To support a disqualification order, the district court must make a specific factual finding that the attorney had knowledge of material and confidential information.* The model rules define knowledge as actual knowledge of the fact in question, but state that knowledge can be inferred from the circumstances.

"In the case at bar, only Mr. and Mrs. Fisher testified. That testimony was not sufficient to make a determination as to whether Randall Fisher acquired material and confidential information during the course of his employment with McDonald, Tinker. The district court must determine motions for disqualification on a case-by-case basis, remembering that the burden of proof lies with the attorney or firm who is sought to be disqualified. If it is determined that the attorney gained material and confidential information during the course of his or her previous employment, then both the attorney and the firm with whom he or she is presently associated are disqualified."

*Id.* 781 P.2d at 1106 (emphasis added).

The motion in the instant case presents us with a nearly identical situation. The fact-findings we have adopted from the *Geisler* opinion lack a finding that Randall Fisher acquired material and confidential information while at McDonald, Tinker. Indeed, the court in *Geisler* specifically found it "unnecessary" to resolve the issue of actual knowledge because it erroneously applied the analysis in Rule 1.10(a) covering prior and current representations occurring in the same firm. *See Geisler*, 716 F.Supp. at 526. While the facts do present some circumstantial evidence from which actual knowledge could be inferred, inferences of fact should be made in the first instance by the fact-finder after the benefit of a full hearing in which the presence or absence of actual knowledge is in controversy. The court in *Parker* had comparable circumstantial evidence before it, but remanded the issue in lieu of making an inference of actual knowledge. We do so as well.

### III.

Although we disqualified the Michaud firm from oral argument on appeal, we now realize that we did so based on insufficient fact-findings. Given our reversal on the merits of Graham's appeal and our remand for new trial, we also remand Wyeth's disqualification motion to the district court for further proceedings in accordance with this opinion.