Veronica BRIGGS, Plaintiff,

v.

ALDI, INC. (KANSAS), Defendant.

Case No. 02–2157–JWL.

United States District Court,
D. Kansas.

Aug. 26, 2002.

Scott C. Long, Michael W. Shunk, McCormick, Adam & Long, P.A., Overland Park, KS, for plaintiff.

John J. Yates, Husch & Eppenberger, Kansas City, MO, Alyssa C. Burghardt, Sari M. Alamuddin, Seyfarth Shaw, Chicago, IL, for defendant.

## MEMORANDUM & ORDER

LUNGSTRUM, District Judge.

Plaintiff filed suit against defendant, her former employer, alleging that defendant discriminated against her on the basis of race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Plaintiff's complaint also sets forth a state law claim for intentional infliction of emotional distress. This matter is presently before the court on three motions: defendant's motion to dismiss plaintiff's intentional infliction of emotional distress claim (doc. # 5); plaintiff's motion for leave of court to file an amended complaint (doc. # 9); and defendant's motion for disqualification of plaintiff's counsel (doc. # 15).

As explained more fully below, defendant's motion to dismiss is granted and plaintiff's claim for intentional infliction of emotional distress is dismissed with prejudice. Plaintiff's motion for leave of court to file an amended complaint is granted in part and denied in part. Defendant's motion for disqualification of plaintiff's counsel is denied.

*Intentional Infliction of Emotional Distress*

In her complaint, plaintiff asserts that "defendant's conduct in firing plaintiff" is sufficient to state a claim for intentional infliction of emotional distress. According to plaintiff, defendant's termination of plaintiff's employment was particularly outrageous because she had worked for defendant for nine years and because white employees who had engaged in conduct similar to that engaged in by plaintiff were not terminated. Defendant moves to dismiss this claim on the grounds that, as a matter of law, plaintiff's allegations do not rise to the level of intentional infliction of emotional distress.

The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his [or her] claims which would entitle him [or her] to relief," *Poole v. County of Otero*, 271 F.3d 955, 957 (10th Cir.2001) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)), or when an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). The court accepts as true all well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir.2001). The issue in resolving a motion

such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S.Ct. 992, 997, 152 L.Ed.2d 1 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)).

Kansas has set a very high standard for the common law tort of intentional infliction of emotional distress. *See Boe v. AlliedSignal Inc.*, 131 F.Supp.2d 1197, 1205 (D.Kan.2001) (citing cases). Moreover, "Kansas courts have been reluctant to extend the [intentional infliction of emotional distress] cause of action to discrimination ... claims." *Id.* (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 554 (10th Cir. 1994)). To establish a prima facie case of intentional infliction of emotional distress, plaintiff must show that (1) defendant's conduct was intentional or in reckless disregard of plaintiff; (2) defendant's conduct was extreme and outrageous; (3) there is a causal connection between defendant's conduct and plaintiff's mental distress; and (4) plaintiff's mental distress is extreme and severe. *Bolden*, 43 F.3d at 553 (citing *Moore v. State Bank of Burden*, 240 Kan. 382, 388, 729 P.2d 1205 (1986)). The threshold inquiries for the tort of intentional infliction of emotional distress are whether "(1) the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery and (2) the emotional distress suffered by the plaintiff is so extreme the law must intervene because no reasonable person would be expected to endure it." *Id.* (citing *Roberts v. Saylor*, 230 Kan. 289, 292–93, 637 P.2d 1175 (1981)).

To constitute sufficiently extreme and outrageous conduct, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond the bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society." *Id.* at 554 (citing *Roberts*, 230 Kan. at 293, 637 P.2d 1175). Plaintiff's complaint fails to contain any factual allegations that would support a claim for intentional infliction of emotional distress. She has alleged only that defendant terminated her employment while treating similarly situated white employees differently. Even if defendant's decision to terminate plaintiff was driven by an unlawful motive such as plaintiff's race, defendant's conduct is not extreme or outrageous as those terms are construed by Kansas courts for purposes of assessing the tort of intentional infliction of emotional distress. *See Gudenkauf v. Stauffer Communications, Inc.*, 922 F.Supp. 461, 464 (D.Kan.1996) (citing *Anspach v. Tomkins Indus., Inc.*, 817 F.Supp. 1499, 1508 (D.Kan.1993); *Fletcher v. Wesley Medical Center*, 585 F.Supp. 1260, 1262 (D.Kan.1984)); *Boe*, 131 F.Supp.2d at 1206. To be sure, the court strongly believes that if defendant did terminate plaintiff's employment based on her race, then such conduct would be "outrageous" as that term is used in everyday parlance. But Kansas courts have decided to construe that term so narrowly in the discrimination context (perhaps because other avenues of relief are available for victims of discrimination), that plaintiff's allegations are simply insufficient to rise to the level of "outrageousness" required by Kansas courts to state a claim for intentional infliction of emotional distress.

For the reasons set forth above, defendant's motion to dismiss plaintiff's intentional infliction of emotional distress claim is granted.

*Motion to Amend Complaint*

Plaintiff seeks to amend her complaint to assert claims on behalf of a class

of similarly situated individuals.[1] The Federal Rules of Civil Procedure provide that a party may amend his or her pleading after a responsive pleading has been filed "only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." *See* Fed.R.Civ.P. 15(a); *Calderon v. Kansas Dep't of Social & Rehabilitation Servs.*, 181 F.3d 1180, 1185–86 (10th Cir. 1999). In determining whether to grant leave to amend, the court may consider such factors as undue delay, bad faith of the moving party, the prejudice an amendment may cause the opposing party, and the futility of amendment. *See Hayes v. Whitman*, 264 F.3d 1017, 1026 (10th Cir. 2001) (undue delay); *Bauchman ex rel. Bauchman v. West High School*, 132 F.3d 542, 559 (10th Cir.1997) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962)). Ultimately, whether to grant leave to amend a complaint is within the discretion of the district court. *See Hayes*, 264 F.3d at 1027.

Defendant contends that plaintiff's motion should be denied as plaintiff's proposed amended complaint fails to comply with Local Rule 23.1 and, thus, would be subject to dismissal in any event. Local Rule 23.1 requires that a complaint in a class action case bear next to its caption the legend, "Complaint–Class Action." *See* D. Kan. R. 23.1(a). The rule further requires, under a separate heading styled "Class Action Allegations," the following:

(1) A reference to the portion or portions of Fed.R.Civ.P. 23 under which it is claimed that the suit is properly maintained as a class action.

(2) Appropriate allegations thought to justify such claim, including, but not necessarily limited to:

(A) The size and definition of the class.

(B) The basis upon which the plaintiff claims (i) to be an adequate representative of the class; or (ii) if the class is comprised of defendants, that those named parties are adequate representatives of the class; (iii) the alleged question of law or fact claimed to be common to the class; and (iv) for actions sought to be maintained under Fed.R.Civ.P. 23(b)(3), allegations thought to support the findings required by that subdivision.

D. Kan. R. 23.1(a). Defendant is correct that plaintiff's proposed amended complaint fails to comply with Local Rule 23.1. In fact, plaintiff's amended complaint fails to include, *inter alia*, the proper caption or headings regarding the proposed class action and it fails to reference that portion of Fed.R.Civ.P. 23 under which it is claimed that the suit is properly maintained as a class action. Thus, plaintiff's motion to amend is denied with respect to the particular proposed amended complaint attached to plaintiff's motion.[2] The court, however, will permit plaintiff to file an amended

---

1. Plaintiff initially sought to amend her complaint to include class claims as well as additional claims under the Missouri Human Rights.Act (MHRA). She now concedes, however, that any claims asserted under the MHRA are time-barred. Thus, to the extent plaintiff is permitted to file an amended complaint, she is not permitted to include any claims arising under the MHRA.

2. The motion is also denied to the extent plaintiff reasserts in her proposed amended complaint her claim for intentional infliction of emotional distress. Because the court has concluded that plaintiff's claim for intentional infliction of emotional distress fails to state a claim as a matter of law, plaintiff is not permitted to reassert this claim in connection with her amended complaint. Plaintiff, however, will not waive any rights she may have to appeal the court's dismissal of that claim.

complaint including class allegations so long as that complaint complies with the specific pleading requirements of Local Rule 23.1.

■ Defendant also urges that the court should deny plaintiff's motion to amend as it is apparent on the face of plaintiff's amended complaint that "plaintiff's proposed class could not possibly be certified." The court, however, has previously held that the appropriate time to address whether a plaintiff has met the requirements necessary to maintain a class action is after the plaintiff has filed a motion for class certification, as stated in Local Rule 23.1(b). *See Sims v. Unified Government of Wyandotte County*, 120 F.Supp.2d 938, 944 (D.Kan.2000). In the absence of any persuasive authority suggesting that the court should consider the merits of the certification issue at the 12(b)(6) dismissal stage, the court declines to do so.

■ Finally, defendant maintains that plaintiff's Title VII claims cannot be the basis of a class action because plaintiff failed to include any class allegations in the charge which she filed with the EEOC. *See Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 127 (7th Cir.1989) (affirming dismissal of class-wide claim where plaintiffs' EEOC charge contained no class-wide allegations). Plaintiff's EEOC charge refers only to specific instances of discrimination against plaintiff. Simply put, plaintiff alleged in her charge that she was discharged on the basis of her race. In her papers, plaintiff all but concedes that her charge is deficient to the extent she now attempts to assert class allegations under Title VII. In that regard, she reiterates that she has also filed a claim under 42 U.S.C. § 1981 and, because that statute does not contain a charge-filing requirement, that her class allegations under § 1981 are not affected by the contents of her EEOC charge.

■ Plaintiff also suggests that her charge should be liberally construed to contain class-wide allegations pursuant to the "reasonably related" rule. That rule, recognized by the Tenth Circuit, permits a complaint to include any claims not listed in the administrative charge as long as such claims are "reasonably related" to the allegations in the charge. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1327 (10th Cir.1999). The rule is consistent with the purposes of the filing requirement-to provide notice of the alleged violation to the charged party, and to provide the administrative agency with the opportunity to conciliate the claims. *Seymore v. Shawver & Sons, Inc.*, 111 F.3d 794, 799 (10th Cir.1997) (citing *Schnellbaecher*, 887 F.2d at 126).

A review of plaintiff's EEOC charge reveals that the purposes underlying the filing requirement have not been satisfied with respect to her class-wide claims. Nothing in plaintiff's EEOC charge would have or should have placed defendant on notice of plaintiff's intention to file a lawsuit on behalf of a class of individuals. The allegations contained in the charge simply do not indicate class-wide discrimination and, in fact, refer only to one specific instance of alleged discrimination-plaintiff's discharge. There is also no indication that the EEOC's investigation of plaintiff's charge actually included an investigation of class-wide discrimination or that the investigation reasonably should have included an investigation of class-wide discrimination. In light of these circumstances, plaintiff's motion to amend is denied to the extent she seeks to assert class claims under Title VII. *See Schnell-*

*baecher,* 887 F.2d at 127–28 (class claims not reasonably related to individual allegations contained in charge where nothing in charge would have put defendant on notice of plaintiffs' intent to file class claims and EEOC's investigation did not include investigation of class-wide discrimination and could not reasonably have been expected to include investigation of class-wide discrimination).

### Disqualification of Plaintiff's Counsel

Defendant moves to disqualify plaintiff's counsel under Model Rule of Professional Conduct 1.9, which pertains to conflict of interest with a former client. By way of background, plaintiff's counsel, Scott C. Long, had a fairly lengthy history of representing defendant Aldi prior to undertaking representation of plaintiff in this case. In December 1996, Mr. Long represented defendant in connection with a sex discrimination and harassment case filed by an assistant manager in one of defendant's stores. In the spring of 1997, Mr. Long handled various real estate transactions on behalf of defendant. Beginning in 1998 and continuing through August 2001, Mr. Long began handling a series of workers' compensation cases on behalf of defendant. In August 2001, Mr. Long notified defendant that he was representing one of defendant's former employees, Michael Curry, in pursuing various claims against defendant.[3] After receiving this notice from Mr. Long, defendant terminated its

relationship with him.[4] In April 2002, Mr. Long filed the present suit on Ms. Briggs' behalf.

A federal court sitting in Kansas and deciding a motion to disqualify for conflict of interest must look for guidance to the Model Rules adopted in Kansas and to Kansas case law construing those rules. *See Graham ex rel. Graham v. Wyeth Laboratories,* 906 F.2d 1419, 1422–23 n. 5 (10th Cir.1990); *accord Regent Ins. Co. v. Insurance Co. of North Am.,* 804 F.Supp. 1387, 1390 (D.Kan.1992); *Koch v. Koch Indus.,* 798 F.Supp. 1525, 1531 (D.Kan. 1992). Rule 1.9(a) of the Model Rules of Professional Conduct, as adopted by the Kansas Supreme Court,[5] precludes a lawyer who has formerly represented a client in a matter from representing "another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation." Kan. S.Ct. Rule 226 at Rule 1.9(a).

■ Disqualification under Rule 1.9(a) is "dependent upon the party moving for disqualification to establish that (1) the attorney whose disqualification is sought formerly represented them in a matter; (2) the matter is substantially related to a matter in which the attorney now seeks to represent a new client; and (3) the new client's interest is substantially adverse to

---

**3.** Mr. Long subsequently filed a lawsuit on Mr. Curry's behalf. That case, along with defendant's motion to disqualify Mr. Long from representing Mr. Curry, is currently pending in the United States District Court for the Western District of Missouri.

**4.** While defendant suggests in its briefing that "Mr. Long may very well have advised [defendant] on Briggs' termination," there is no support for that assertion in any of the exhibits attached to defendant's papers. Signifi-

cantly, there is no evidence in the record before the court that Mr. Long obtained any information about Ms. Briggs' discharge or employment while he was representing defendant.

**5.** The District of Kansas, in turn, has adopted the Model Rules of Professional Conduct as adopted by the Kansas Supreme Court. *See* D. Kan. Rule 83.6.1(a).

the interest of the party seeking disqualification." *Chrispens v. Coastal Refining & Marketing, Inc.*, 257 Kan. 745, 756, 897 P.2d 104 (1995). The burden of proof under Rule 1.9(a) is upon the party alleging conflict and moving for disqualification. *Id.*

There is no dispute that Mr. Long previously represented defendant in various matters, that plaintiff's interest is substantially adverse to the interest of defendant, and that defendant does not consent to Mr. Long's representation of plaintiff. Thus, the threshold issue presented by defendant's motion is whether there is a "substantial relationship" between the matters Mr. Long worked on while representing defendant and plaintiff's case here. *See id.* (primary inquiry under Rule 1.9(a) is whether the cases where conflict has been alleged are substantially related). As the Kansas Supreme Court has counseled, a trial court should not hold a hearing when dealing solely with a Rule 1.9(a) motion for disqualification; rather, the court should make the determination of whether matters are "substantially related" on the basis of the record, additional documentation provided by counsel regarding the previous representation, and arguments of counsel. *Id.* at 759, 897 P.2d 104.

■ In determining whether a substantial relationship exists, the court evaluates the similarities between the factual bases of the two representations. *See Koch,* 798 F.Supp. at 1536; *accord Graham ex rel. Graham,* 906 F.2d at 1422 (defining "substantially related" to mean that the "factual contexts of the two representations are similar or related"). A commonality of legal claims or issues is not required. *Koch,* 798 F.Supp. at 1536 (citation omitted). Such an evaluation requires the court to "reconstruct the attorney's representation of the former client, to infer what confidential information could have been imparted in that representation, and to decide whether that information has any relevance to the attorney's representation of the current client." *Id.* (citing *LaSalle Nat. Bank v. County of Lake,* 703 F.2d 252, 255–56 (7th Cir.1983)). What confidential information could have been imparted involves considering what information and facts ought to have been or would typically be disclosed in such a relationship. *Id.* Consequently, the "representations are substantially related if they involve the same client and the matters or transactions in question are relevantly interconnected or reveal the client's pattern of conduct." *Id.* As the comment to Rule 1.9(a) notes, "the underlying question is whether the lawyer was so involved in the matter that the subsequent representation can be justly regarded as a changing of sides in the matter in question."

■ The court begins with Mr. Long's representation of defendant in connection with the sex discrimination and harassment suit filed by a former assistant manager. With respect to that case, defendant has attached to its papers a copy of the complaint filed by the assistant manager, Stacey Burke; defendant's answer to the complaint; and the billings that defendant received from Mr. Long for his work on the case. Ms. Burke's complaint reveals that she worked for defendant at its store in Wichita, Kansas beginning in 1993; that she believed she was passed up for a promotion on numerous occasions based on her sex; that one particular supervisor, Brian Shively, allegedly subjected Ms. Burke to sexual harassment; and that she was allegedly discharged based on her sex. In its answer, defendant denied the vast majority of Ms. Burke's allegations and

further stated that she was discharged for tardiness and her failure to perform adequately a "test cart merchandise run." Mr. Long's billings reflect that he worked on the case from October 1996 through March 1997. During that time, Mr. Long interviewed various witnesses, reviewed various personnel files, engaged in written discovery and, ultimately, engaged in successful settlement negotiations.

From these documents and the nature of the case filed by Ms. Burke, the court infers that defendant could have disclosed confidential information to Mr. Long regarding its anti-harassment policies; its efforts to respond to Ms. Burke's allegations of harassment, including any investigation of those allegations; information concerning Mr. Shively's employment history; its promotion decisions in the Wichita, Kansas area; and the circumstances surrounding Ms. Burke's discharge. Nothing in the record before the court, however, suggests that such information would be relevant or bear in any way on Ms. Briggs' case. Ms. Briggs' complaint alleges that she worked for defendant at one of its Kansas City, Missouri stores and that she was allegedly discharged based on her race. Defendant contends that Ms. Briggs was discharged for leaving money overnight in a lockbox and for failing to enforce store policies relating to store conditions and inventory control. Arguably, Mr. Long, in connection with Ms. Burke's case, could have obtained information from defendant regarding defendant's "legitimate nondiscriminatory reasons" for the employment decisions concerning Ms. Burke. Specifically, Mr. Long could have learned the extent to which such proffered reasons were valid or the extent to which those reasons were pretextual. But in the absence of any evidence that defendant's decisionmaking processes with respect to

employees in Wichita and employees in Kansas City were centralized or that any of the individuals making decisions with respect to Ms. Burke's employment were the same individuals making decisions with respect to Ms. Briggs' employment, the court cannot conclude that any knowledge Mr. Long may have gained regarding defendant's proffered reasons with respect to its decisions concerning Ms. Burke would somehow place Mr. Long in a position to know that defendant's proffered reasons with respect to Ms. Briggs were pretextual.

In short, defendant has failed to come forward with sufficient evidence demonstrating that Ms. Briggs' case is substantially connected to Ms. Burke's case. Ms. Briggs' case has nothing to do with defendant's Wichita store, with sexual harassment or with allegedly sex-based promotion or discharge decisions. There is no indication in the record that the cases involve the same decisionmakers, the same witnesses or the same documents. The two cases, taken together, do not reveal a "pattern of conduct" engaged in by defendant, do not reveal similar "factual contexts," and do not suggest a "changing of sides" by Mr. Long.

 The only other specific matters that Mr. Long handled on behalf of defendant are real estate transactions and workers' compensation cases. The court has thoroughly reviewed the documents submitted by defendant regarding these matters and easily concludes that the factual contexts of these matters are wholly unrelated to the factual context of Ms. Briggs' case. Defendant apparently suggests that Mr. Long's work on the workers' compensation cases would have provided Mr. Long with access to defendant's "personnel and other human resources informa-

tion." While it can be assumed that Mr. Long had access to the personnel files of individual workers' compensation claimants, there is no indication that such information would be at all relevant to Ms. Briggs' case. Similarly, while Mr. Long may have learned a great deal about the way in which defendant handles workers' compensation issues, there is no reason to believe that such information would be helpful to Mr. Long in representing Ms. Briggs. Thus, the court cannot conclude that the real estate and/or workers' compensation issues handled by Mr. Long for defendant are substantially related to Ms. Briggs' case.

■ Defendant's remaining argument is that Mr. Long had "access" to Mr. Curry, who not only oversaw the division in which Ms. Briggs worked, but also was in charge of defendant's National Diversity Committee. According to defendant, it is "obvious," then, that Mr. Curry has confidential information relevant to Ms. Briggs' individual claims and, more importantly, relevant to Ms. Briggs' class claims. The problem with defendant's argument, however, is that there is simply no evidence that Mr. Long ever discussed with Mr. Curry-during the time period he represented defendant on various matters-Ms. Briggs' employment, general diversity issues with respect to defendant, or race discrimination issues. In fact, the exhibits attached to defendant's papers reflect only that Mr. Long sent occasional status reports to Mr. Curry regarding Ms. Burke's case and, on one occasion, sent a general solicitation letter to Mr. Curry.

While Mr. Curry appears to be sharing confidential information with Mr. Long now in connection with Mr. Long's representation of Mr. Curry, the relevant question is whether Mr. Long could have received such information from Mr. Curry while he was representing defendant. In that regard, there is no evidence that Mr. Long had any contact with Mr. Curry aside from the specific instances described above. There is no evidence that Mr. Long visited with Mr. Curry about general employment-related issues or that Mr. Long was defendant's "general employment counsel" or "general litigation counsel." Simply put, there is no evidence that Mr. Long ever advised defendant on any matters aside from those specific matters referenced in defendant's exhibits. Thus, this case is distinct from *Woodward v. Board of Public Utilities of Kansas City, Kansas,* No. 86–2331–S, 1987 U.S. Dist. LEXIS 9307, at *4–6 (D.Kan. Sept. 2, 1987), a case relied upon by defendant, where Judge Saffels disqualified plaintiff's counsel in a race discrimination suit despite counsel's protestation that it had never handled a discrimination case for defendant because counsel had the opportunity through five years of general representation to become "intimately acquainted" with the personnel policies challenged by plaintiff. *Cf. Marten v. Yellow Freight System, Inc.,* No. 96–2013–GTV, 1996 WL 568840, at *3 (D.Kan. Sept. 5, 1996) (refusing to disqualify plaintiff's counsel in an employment discrimination case because counsel's prior representation of defendant was "limited" and did not concentrate on defendant's specific employment discrimination policies).

In sum, the burden here was on defendant to proffer sufficient evidence for the court to ascertain the scope of counsel's prior representation of defendant and to establish the relevance of that information to counsel's representation of plaintiff. *See Marten,* 1996 WL 568840, at *3. Based on the evidence submitted by defendant, the court simply cannot conclude that

plaintiff's counsel represented defendant in matters "substantially related" to Ms. Briggs' case. The motion to disqualify is therefore denied.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion to dismiss plaintiff's claim for intentional infliction of emotional distress **(doc. # 5)** is **granted** and that claim is dismissed with prejudice. Plaintiff's motion for leave to file an amended complaint **(doc. # 9)** is **granted in part and denied in part.** The motion is granted to the extent plaintiff seeks to include class allegations pursuant to 42 U.S.C. § 1981 and is denied to the extent plaintiff seeks to include class allegations pursuant to Title VII and to the extent plaintiff seeks to reassert a claim for intentional infliction of emotional distress. Plaintiff shall file her amended complaint, following the requirements of Local Rule 23.1, on or before **September 6, 2002.** Defendant's motion for disqualification of plaintiff's counsel **(doc. # 15)** is **denied.**

**IT IS SO ORDERED.**