John A. PFARR, et al

v.

ISLAND SERVICES CO., INC., Ballard's Service Center, Inc., and Clifford C. McGinnes.

Civ. A. No. 88–0312L.

United States District Court, D. Rhode Island.

Jan. 12, 1989.

Steven E. Snow, Providence, R.I., for plaintiffs.

Matthew F. Medeiros, Flanders & Medeiros, Inc., Providence, R.I., for defendants.

## MEMORANDUM AND ORDER

JACOB HAGOPIAN, United States Magistrate.

Before the Court is defendants' motion to disqualify the law firm Partridge, Snow & Hahn as plaintiffs' counsel.

### Statement of Facts

The instant litigation was commenced by plaintiffs John S. Pfarr, Thomas D. Neumayer, Judith E. Clark, Gary A. Hall, Vincent J. Ryan and Atlantic Inn, Inc. Defendants are Island Services Co., Inc. (Island Services), Ballard's Service Center, Inc. (Ballard's) and Clifford C. McGinnes. Plaintiffs are residents of the Town of New Shoreham and seek to represent all full and part-time residents and businesses on Block Island. Defendants Ballard's and Island Services are corporations with their principal places of business in the Town of New Shoreham. Both defendant corporations are engaged in the business of purchasing, selling, storing, transporting and distributing gasoline and petroleum products on Block Island. Defendant Clifford McGinnes is part owner and manager of both Island Services and Ballard's. McGinnes acquired substantial ownership in both of these corporations in December, 1986.

Plaintiffs' instant complaint alleges that defendants' business activities are engaged in unlawful monopolization and price-fixing in the sale of gasoline and other petroleum products in violation of Sections 1 and 2 of the Sherman Act, Title 15 U.S.C. Sections 1 and 2, Section 7 of the Clayton Act, Title 15 U.S.C. Section 18, and in violation of the R.I.G.L. Section 6–36–4 and Section 6–36–5.

Plaintiffs are represented in the instant action by the law firm Partridge, Snow & Hahn (PS & H). The firm is comprised of lawyers who were previously affiliated with the law firm of Tillinghast, Collins and Graham (TC & G) until March 31, 1988 when they left the firm and founded PS & H. Defendants, relying primarily on Canon 4 of the Code of Professional Responsibility (Code) and *Kevlik v. Goldstein*, 724 F.2d 844 (1st Cir.1984), have moved to disqualify PS & H as plaintiffs' counsel. Defendants claim that at the time PS & H attorneys were affiliated with TC & G, TC & G had been counsel for many years to defendant Island Services and to Block Island Power Co. (BIPCO), which at the time were both owned and operated by a Franklin Renz. Defendants urge that disqualification is necessary because while at TC & G, PS & H's partners represented Island Services in matters substantially related to the issues raised in the present antitrust litigation and had access to confidential information involving the same.

### Applicable Law

The movant supports its motion for disqualification by relying on Canon 4 of the Code, and *Kevlik, supra*.

The test used by the United States Court of Appeals for the First Circuit in assessing whether disqualification should be had by reason of a breach of Canon 4 hinges upon the relationship between the prior representation and the present case, otherwise known as the "substantial relation"

test. The First Circuit in *Kevlik, supra,* citing with approval *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1266 (7th Cir.1983) has recognized that a substantial relation is found where "... a lawyer *could have obtained confidential information* in the first representation that would have been relevant in the second" (underscoring supplied). Where this showing is made, the court will assume that during the course of the former representation, confidences were disclosed to the attorney bearing on the subject matter of the representation. *Kevlik, supra* at 851, citing *Theatre Corp. v. Warner Bros. Pictures, Inc.,* 113 F.Supp. 265 (S.D.N.Y.1953). Moreover, "it is irrelevant whether ... the lawyer is a firm rather than an individual practitioner (even where) ... different people in the firm handled the two matters and scrupulously avoided discussing them." *See Analytica, Inc., supra* at 1266.

Local Rule 4(d) of the United States District Court for the District of Rhode Island adopts the standard of conduct of the Code of Professional Responsibility of the Rhode Island Supreme Court. Defendants' motion to disqualify is based primarily on Canon 4 of the Code.

The PS & H attorneys, oppose their disqualification and urge that the new Rules of Professional Conduct would not compel their disqualification. The PS & H attorneys have made a showing that they have no recollection nor actual knowledge of the affairs of the defendants while they served as attorneys in the firm of TC & G. In turning to the new rules relied upon by PS & H attorneys, I find this. On November 15, 1988, the Rhode Island Supreme Court replaced the Code of Professional Responsibility to include the mentioned Canon 4 with the new Rules of Professional Conduct. The new Rules of conduct are detailed and address with particularity an attorney's responsibility. Those Rules adhere to the basic principle of Canon 4 of the Code that a lawyer should preserve the confidences and secrets of a client. Rule 1.6 "Confidentiality of Information" of the new Rules addresses this principle. Addressed in what is entitled "Scope" of the new Rules, is the importance of preserving the attorney-client privilege. It is noted that "clients are entitled to expect that communications within the scope of the privilege will be protected against compelled disclosure." (p. 5). The question of attorney disqualification, the issue in the instant motion, is specifically addressed in Rules 1.9 and 1.10 of the new Rules.

Comparatively, Rules 1.9 and 1.10 appear to be consistent with the test for attorney disqualification set out in *Kevlik, supra.* PS & H attorney Steven Snow has directed the Court's attention to the "Comments" following Rules 1.9 and 1.10 which include a discussion regarding the application of the new Rules in determining disqualification of attorneys. Unlike *Kevlik,* the Rules "Comments" suggest that the Rules apply less rigidly, depending on the circumstances, where there was representation for a limited purpose. Also, unlike *Kevlik,* the "Comments" to Rule 1.10 state that (b) and (c) of Rule 1.10 operate to disqualify the firm only when the lawyer has "actual knowledge" of information protected by Rules 1.6 and 1.9(b). However, according to the new Rules "actual knowledge" depends upon the extent to which a lawyer had access to confidential information. The "Comments" state examples of the application of this rule as follows:

A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients. (underscoring supplied)

It is this Court's understanding that under Canon 4 of the Code, the confidential knowledge possessed by one attorney is imputed to the rest of the attorneys within the firm. Whereas under the new Rules of

conduct there is no imputation of knowledge unless there is an inference of knowledge created by reason of general access had to the files as opposed to limited access. Furthermore, the "Comments" to the new rules point out that the burden of proof rests on the attorneys whose disqualification is sought.

This Court acknowledges the adoption of the new Rules of conduct by the Rhode Island Supreme Court; however, the new Rules have not been expressly made applicable in this Court. If adopted by this Court, it would appear that the new Rules of conduct would apply prospectively and not retroactively. *See Kevlik, supra.* The Rhode Island Supreme Court ordered that the old Code, to include Canon 4, would apply to any proceedings commenced prior to November 15, 1988, and the new Rules shall prospectively govern proceedings following that date. *In Re Rhode Island Rules of Professional Conduct*, (R.I. Supreme Court, November 1, 1988). Thus, I apply, as I must, the old Code which was the one in effect at the time of the instant disqualification motion. The same standard was applied in *Putnam v. Sammartino, Inc.*, C.A. No. 87–0414B (January 13, 1988).

Given my application of Canon 4 in conjunction with *Kevlik*, I find that defendants' motion for disqualification should be granted. An application of the new Rules would have produced the same result of disqualification. Here, PS & H attorneys had "general access" to the clients' files during their affiliation with TC & G. Accordingly, they meet the actual knowledge standard, given the record before me, necessary for disqualification if the new Rules were to be applied. Thus, the new Rules do not help the PS & H attorneys whose disqualification is sought.

## I. DEFENDANT ISLAND SERVICES CO., INC. WAS A CLIENT OF TILLINGHAST, COLLINS & GRAHAM AT THE TIME MEMBERS OF PARTRIDGE, SNOW & HAHN WERE ASSOCIATED WITH THE FIRM.

Defendants in the instant motion allege that defendant Island Services was a client of TC & G at the time that members of PS & H were affiliated with the firm. The challenged attorneys assert by affidavit, according to their recollection, that Island Services was never a client of TC & G and, if it were, none of the PS & H attorneys who were once members of TC & G recall any representation of Island Services.

In support of their motion to disqualify, defendants submit the affidavit of Peter V. Lacouture, an attorney with the law firm of TC & G since 1972 and partner since 1978. In his affidavit, Lacouture acknowledges that TC & G had represented Island Services and BIPCO since 1980. Lacouture supervised much of the work for Island Services and BIPCO; however, he states that some of PS & H's attorneys, once former partners of TC & G, also performed legal services for Island Services and BIPCO. Defendants allege that as a result of these services, PS & H attorneys had access to confidential client information that would be useful to plaintiffs in the present litigation thereby violating the attorney-client privilege.

One instance of representation by TC & G occurred at hearings before the Rhode Island Public Utilities Commission. In 1980 and 1983 TC & G represented BIPCO during rate proceedings before the Public Utilities Commission and because Island Services had common ownership and commercial dealings with BIPCO, TC & G had ongoing access to confidential Island Services information. Defendants claim that the Island Services information involved highly sensitive commercial materials, including files relating to fuel sales by Island Services to BIPCO and years of corporate income tax returns and financial statements. At the rate proceedings, the Town of New Shoreham and the Attorney General requested production of these confidential documents. Given the sensitivity of the documents, the Public Utilities Commission agreed to issue protective orders limiting disclosure of the documents in the proceedings. This decision was later upheld by the Rhode Island Supreme Court in *Town of New Shoreham v. Rhode Island Public Utilities Commission*, 464 A.2d 730

(R.I.1983). During the litigation over the protective orders, TC & G represented both Island Services and BIPCO in their efforts to maintain the confidentiality of their files.

Another instance of representation by members of PS & H while at TC & G as indicated by the record includes a deposition on behalf of Island Services and BIPCO regarding fuel pricing in July of 1985. Also, Attorney Lacouture recalls a conversation with Attorney Purcell, a member of PS & H and former partner of TC & G, where Purcell agreed to perform additional work on issues relating to Island Services' sale of petroleum products. The record further indicates that TC & G assisted in the possible refinancing of BIPCO just prior to Mr. Renz's sale of BIPCO and Island Services whereby TC & G reviewed an extensive amount of confidential financial information relating to each company in connection with the refinancing. TC & G also provided legal advice to Mr. Renz during the early negotiations leading to the sale of Island Services and BIPCO. In fact, defendants urge that TC & G continued its representation after the sale of both companies for more than fifteen months before PS & H's partners left TC & G to form their own law firm.

Plaintiffs, in response to the instant motion, have submitted supporting affidavits. They admit that BIPCO was a client of TC & G during the time PS & H attorneys were members of that firm. However, they claim that no relationship existed between defendant Island Services and attorneys of PS & H. Plaintiffs urge that Island Services was never a client of TC & G during the period in which PS & H attorneys were members. They admit to representation of BIPCO by TC & G but urge that the references to BIPCO together with Island Services is misleading. They further urge that confidences revealed by BIPCO to TC & G are not even remotely relevant to the present suit since BIPCO is neither a defendant nor adversely affected by the present suit. Furthermore, plaintiffs point out that Island Services is being sued due to its ownership and management by defendant McGinnes on and after 1986 and not due to its ownership by Mr. Renz prior to that.

I find in the instant case that defendant Island Services was indeed a client of TC & G at the time that PS & H's attorneys were members of that firm. The record, which includes the affidavit of TC & G attorney Peter Lacouture and copies of TC & G index cards illustrating Island Services as a client, is evidence that TC & G represented Island Services in several legal matters. Further evidence of this is a check signed by former TC & G attorney Steven Snow, a member of PS & H and leading counsel for plaintiffs in the instant case. The check illustrates payment of an Annual Report filing fee by TC & G for Island Services.

It is clear from the series of representations that indeed a attorney-client relationship existed between TC & G and Island Services while PS & H attorneys were still members of the TC & G firm. This relationship creates the irrebuttable presumption that during TC & G's former representation of Island Services confidences were then disclosed to the firm's attorneys, which included the instant PS & H attorneys. *Kevlik, supra.* It is presumed that even if the firm's attorneys lacked actual knowledge, there is an inference of knowledge by reason of general access had by the now challenged attorneys to confidential information. Here, TC & G's knowledge of Island Services' confidences is imputed to all members of the firm which includes PS & H attorneys.

## II. TILLINGHAST, COLLINS & GRAHAM AND PARTRIDGE, SNOW & HAHN ATTORNEYS REPRESENTED ISLAND SERVICES IN MATTERS SUBSTANTIALLY RELATED TO THE PRESENT LITIGATION.

Plaintiffs urge that even if defendant Island Services is proven to have been a client of TC & G, which I find it has been, defendants' allegations fail to establish a "substantial relationship" between the confidential information allegedly received by PS & H attorneys and the present litigation. Defendants claim that extensive con-

fidential information regarding Island Services representation was communicated to TC & G for many years and that the information disclosed is substantially related to the present litigation. Given the several instances of representation discussed earlier, it is clear that the confidential communications between TC & G and Island Services included detailed financial records, fuel pricing information and details regarding Island Services' business activities.

Since the instant complaint alleges unlawful monopolization and price-fixing in the sale of gasoline and other petroleum products, I find that the Island Services information that TC & G had access to is at the heart of the monopolization claim and therefore substantially related to the matters in the present litigation. Even if the Court were to find, which it does not, that PS & H attorneys were unaware of Island Services as a client of TC & G and had no access to the confidential information involved, the acquisition of confidential information by one lawyer, here Attorney Lacouture, at a firm extends to the firm's other members—the PS & H attorneys. *Kevlik, supra* at 849.

In light of the above, I find that PS & H's continued representation of plaintiffs in the present case would be in violation of Canon 4. Accordingly, the instant motion to disqualify the firm of PS & H as plaintiffs' counsel is hereby GRANTED.