**SLC LIMITED V, a California limited partnership, Petitioner–Appellee,**

v.

**BRADFORD GROUP WEST, INC., a Utah corporation, Respondent– Appellant.**

**No. 92–4225.**

United States Court of Appeals, Tenth Circuit.

July 12, 1993.

---

Craig L. Taylor of Ray, Quinney & Nebeker, Salt Lake City, UT, for respondent-appellant.

Reid W. Lambert (Paul James Toscano also of Woodbury & Kesler, Salt Lake City, UT, with him on the brief), for petitioner-appellee.

Before LOGAN, McWILLIAMS and MOORE, Circuit Judges.

LOGAN, Circuit Judge.

Bradford Group West, Inc. (Bradford) appeals from the district court's order disqualifying its counsel from further representing it in the underlying bankruptcy proceeding. 147 B.R. 586.

SLC V Ltd. (SLCV) is a single asset real estate limited partnership, currently a debtor in bankruptcy, whose general partner is the Loran Corporation (Loran). Bradford held a secured note on SLCV's sole property, West Towne Center. Following several defaults and forbearances, SLCV's obligation under the note matured and fell into arrears. SLCV petitioned for bankruptcy, and the bankruptcy court later granted Bradford's request for relief from the automatic stay. SLCV appealed from the order granting relief, and then filed the motion to disqualify Bradford's counsel, Ray, Quinney & Nebeker (RQN), at issue here.[1]

---

1. Bradford has already foreclosed on West Towne Center. However, SLCV has appealed the bankruptcy court's lifting of the automatic stay and that appeal has been abated pending our decision here. Therefore, determination of whether Bradford's counsel is qualified to continue its representation is still a live issue and we

The alleged conflict of interest on which the motion for disqualification is based arose shortly before the bankruptcy court granted relief from the automatic stay, when attorney Weston Harris joined RQN. Previously, Harris had practiced with Watkiss & Saperstein and had represented Loran in several bankruptcies and loan workouts involving partnerships and properties different from those in the instant case. Interpreting the Utah Rules of Professional Conduct, the bankruptcy court disqualified Harris from participating in this litigation but allowed RQN to continue its representation of Bradford. On appeal, the district court disqualified RQN by imputation.

Bradford argues that the bankruptcy and district courts erred in finding that Harris' prior representation of Loran was "substantially factually related" to the current litigation, and that the district court additionally erred in rejecting the bankruptcy court's totality of the circumstances analysis and in imputing Harris' disqualification to RQN as a whole.

■ "Ordinarily the control of attorneys' conduct in trial litigation is within the supervisory powers of the trial judge, and his performance in this area is a matter of judicial discretion." *Redd v. Shell Oil Co. (In re Graney)*, 518 F.2d 311, 314 (10th Cir.1975). Neither this court nor the district court can disturb the bankruptcy court's factual findings regarding attorney conduct unless there is no reasonable basis to support its conclusions. Both this court and the district court exercise de novo review over the bankruptcy court's conclusions of law. *Eastland Mortgage Co. v. Hart (In re Hart)*, 923 F.2d 1410, 1411 (10th Cir.1991).

have jurisdiction because this is an appeal following a final order of the bankruptcy court.

2. Although when Bradford was in the district court it appears not to have contested the bankruptcy court's factual findings in this respect, whether the bankruptcy court applied the proper standard in disqualifying Harris presents a legal question appropriate for our review.

3. The definition of substantiality adopted in *Whatcott* originated in *Trone v. Smith*, 621 F.2d

**I**

■ We address first whether the bankruptcy court was correct in disqualifying Harris individually.[2] The Rules of Practice of the District of Utah provide that "[a]ll attorneys practicing before this court ... shall be governed by and shall comply with the rules of practice adopted by this court and ... with the Utah Rules of Professional Conduct." D.Utah R. 103–1(h). The bankruptcy court is also governed by these rules. Bankr.D.Utah R. 501. Utah has adopted, with some variations, the American Bar Association Model Rules of Professional Conduct. *See* Utah Court R.Ann. ch. 13. Utah Rule of Professional Conduct 1.6 prohibits a lawyer from revealing information relating to the representation of a client without the client's consent, with exceptions not relevant here. In addition, under Utah Prof.Conduct Rule 1.9:

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) Represent another person in the same or a substantially factually related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) Use information relating to the representation to the disadvantage of the former client except as rule 1.6 would permit with respect to a client or when the information has become generally known.

Utah Court R.Ann. at 972.

In an earlier case arising out of Utah we applied a "substantial relationship" test and held that "[s]ubstantiality is present if the factual contexts of the two representations are similar or related." *Smith v. Whatcott*, 757 F.2d 1098, 1100 (10th Cir.1985) (quotation omitted).[3] The Utah Prof.Conduct Rule

994, 998 (9th Cir.1980). There the Ninth Circuit elaborated that, to protect client confidentiality and uphold the duty of loyalty, "[i]f there is a reasonable probability that confidences were disclosed which could be used against the client in later, adverse representation, a substantial relation between the two cases is presumed." *See also T.C. Theatre Corp. v. Warner Brothers Pictures, Inc.*, 113 F.Supp. 265, 268–69 (S.D.N.Y. 1953).

1.9 requires that the matters be "substantially factually related." We understand this variation from the ABA model code to be a codification of our existing definition of substantiality by focusing on the factual nexus between the prior and current representations rather than a narrower identity of legal issues. Substantial factual relation should not be read to require attorneys to have worked on exactly the same matter for both sides of the dispute before they are disqualified. That the Utah Rules attempt to strike a balance is clear from the comments following Rule 1.9:

> When a lawyer has been directly involved in a specific transaction, subsequent representation of other clients with materially adverse interests clearly is prohibited. On the other hand, a lawyer who recurrently handled a type of problem for a former client is not precluded from later representing another client in a wholly distinct problem of that type even though subsequent representation involves a position adverse to the prior client.

Utah R.Prof.Conduct 1.9 cmt.

■ After a hearing, the bankruptcy court made specific findings regarding Harris' knowledge of Loran's strategies and operations, based on Harris' representation of Loran while practicing with Watkiss & Saperstein. The bankruptcy court found that Harris had represented Loran in loan workouts and debt restructuring, and in the renegotiation of a loan with Bradford, the creditor in the instant case. It found that Harris had obtained confidential information regarding the financial positions of various guarantors and Loran, the general partner, as well as Loran's negotiating strategies and its capacity to settle its outstanding indebtedness. Although the bankruptcy court ruled that Harris' representation of Loran was "substantial-ly related" to the current matter, rather than "substantially factually related" as required by the Utah rule, the surrounding language indicates that the bankruptcy court found a close factual nexus between the prior representation and the current litigation.[4] While it would have been preferable for the bankruptcy court to recite the specific language of the rule, considering its findings as a whole we cannot hold that the court erred in disqualifying Harris.

## II

■ Utah Rule of Professional Conduct 1.10(b) treats whether Harris' disqualification should be imputed to RQN as a whole.

> When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially factually related matter in which that lawyer, or a firm with which the lawyer has associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

*Id.* In *Graham v. Wyeth Laboratories*, 906 F.2d 1419 (10th Cir.1990), we held that four elements must be satisfied before the law firm of an attorney who has changed firms can be disqualified under Rule 1.10(b). First, either the lawyer who has changed firms or his prior firm must have represented a client whose interests are materially adverse to the client of the new firm. Second, the two matters must be the same, or substantially related.[5] Third, the lawyer who has changed firms must have acquired information protected by Rules 1.6 and 1.9(b) that is material to the new firm's representation. Fourth, the new firm must know of the con-

---

4. The bankruptcy court stated that:

   [T]he aforesaid confidential information obtained by Mr. Harris is substantially related to this contested matter because it relates to the ability of Loran and its guarantors to Bradford to satisfy debts in general and, therefore, to deal with the issues in this debt restructure. The information is also related to the strategy that Loran, as general partner, may employ in dealing with delinquent creditors.

Court's Ruling on Motion to Disqualify Counsel and Motion for Stay Pending Appeal, May 14, 1992, at 4.

5. *Graham* was decided under the Kansas Rules of Professional Conduct, which require that the matters be "substantially related." We see no difficulty in adopting the *Graham* analysis for the Utah Rules, reading this second element as requiring substantial factual relation.

flict arising from its representation. *Id.* at 1422.

This represents a change from the reasoning that we followed in *Whatcott,* and on which the district court relied in conducting its analysis on appeal. In *Whatcott* we held that when a court concludes that the prior and current representations are substantially related it gives rise to an irrebuttable presumption that the attorney who has changed sides had access to the confidences of all of the clients of his former firm, and that he has shared that information with his new partners. 757 F.2d at 1100–01. Although we did not foreclose the possibility that adequate screening measures in place at the time of the potentially disqualifying event could create an exception to the second of these presumptions, neither did we specifically adopt an exception when screening measures are in place. *Id.* at 1101. This analysis was grounded in the ABA Model Code of Professional Responsibility, which provided without qualification that "[t]he obligation of a lawyer to preserve the confidences and secrets of his client continues after the termination of his employment," EC 4–6, and that "a lawyer should avoid even the appearance of professional impropriety." Canon 9.

■ *Whatcott* was decided, however, before Utah adopted the Rules of Professional Conduct and, as we noted in *Whatcott,* the Model Rules shift from a per se disqualification rule, to "support a functional analysis of such conflicts of interest and oppose application of an irrebuttable presumption." *Id.* at 1101 n. 2. Under this functional analysis, imputed disqualification of a law firm is determined on the facts of the particular situation and is driven in part by the extent to which the attorney involved had access to information about his former client. Thus, although the burden remains with the firm whose disqualification is sought, a firm is disqualified only when the attorney involved had actual knowledge of material information protected by Rules 1.6 and 1.9(b).

An individual attorney's continuing duty of loyalty to his client may prevent him from taking an adverse position, but this would not extend to his new firm as a whole. The Utah Rules explicitly reject as "unrealistic" the presumption that a partner in a law firm has access to all the confidences of all the firm's clients, and dismiss the Model Code's "appearance of impropriety" standard as "question-begging." Utah R.Prof.Conduct 1.10 cmt. Instead, the comments observe that:

[T]he rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after leaving a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or another and that many move from one association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity of lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

*Id.*

■ In determining RQN's disqualification, we look to whether the four elements laid out in *Graham* have been satisfied. Neither side disputes that Harris represented Loran while practicing at Watkiss & Saperstein, that Loran's interests are materially adverse to Bradford's, or that RQN was aware of the conflict. We have already determined that Harris' prior and current representations are substantially factually related. Therefore, the only question that remains is whether Harris had acquired information about Loran protected by Rules 1.6 and 1.9(b) that is material to RQN's current representation of Bradford.

■ Although the bankruptcy court did not structure its findings in conformance with the requirements of *Graham,* it did make a determination regarding the materiality of the information Harris possessed. In deciding not to impute Harris' disqualification to RQN, the bankruptcy court found that Harris' "active participation with Loran ... has been ... not specifically on the matters in this particular case." Court's Ruling on Motion to Disqualify Counsel and Motion for Stay Pending Appeal, May 14, 1992, at 5. Our reading of the record con-

firms that the information Harris had acquired in his representation of Loran is not material to Loran's current litigation with Bradford. Thus, it was appropriate for the bankruptcy court to disqualify Harris without imputing that disqualification to RQN.[6] However, because Harris remains bound not to reveal information relating to his representation of Loran or to use that information to Loran's disadvantage, and because the Rules require screening measures only for former government attorneys, the screening measures imposed by the bankruptcy court, and reviewed for adequacy by the district court, should be removed. RQN is qualified to continue its representation of Bradford in this matter.

AFFIRMED in part, REVERSED in part.

---

6. The comments to Rule 1.10 anticipate this problem and address it directly as an aspect of an individual attorney's duty of loyalty to his former client. A lawyer changing firms has an
obligation to decline subsequent representations involving positions adverse to a former client arising in substantially related matters. This obligation requires abstention from adverse representation by the individual lawyer involved, but does not properly entail abstention of other lawyers through imputed disqualification.... Thus, if a lawyer left one firm for another, the new affiliation would not preclude the firms involved from continuing to represent clients with adverse interests in the same or related matters, so long as the conditions of Rule 1.10(b) and (c) concerning confidentiality have been met.
Utah R.Prof.Conduct 1.10 cmt.