**Robert D. HERINGER, Petitioner,**

v.

**The Honorable Bruce B. HASKELL, Judge of the District Court, South Central Judicial District, Michael Puklich, P.C., and Michael Puklich, individually, Respondents.**

Civ. No. 950034.

Supreme Court of North Dakota.

Aug. 29, 1995.

---

Irvin B. Nodland (argued), of Irvin B. Nodland, P.C., Bismarck, and Craig A. Boeckel (appearance), Bismarck, for petitioner.

Scott K. Porsborg (argued), of Smith Bakke Hovland & Oppegard, Bismarck, for respondent.

LEVINE, Justice.

Robert Heringer petitions this court for a supervisory writ directing the district court to disqualify Randall Bakke and the law firm of Smith, Bakke & Hovland from representing Michael Puklich in litigation against Heringer. We grant the writ and direct the district court to disqualify Bakke and the firm from representing Puklich in this action.

The underlying dispute in this case is an action by Heringer against Puklich for negligence, professional malpractice and fraud. Puklich, a certified public accountant, provided accounting services and professional advice to Heringer in the purchase of a boat dealership. Heringer purchased the business and eventually filed for bankruptcy.

Attorney Kenneth Horner practiced with Sheldon Smith and Randall Bakke in a partnership entitled Smith, Horner & Bakke. In January 1992 Heringer consulted Horner about a possible lawsuit against Puklich. Horner's meeting with Heringer lasted several hours and Horner took extensive notes. He subsequently opened a file at the law firm and placed his notes and other materials into this file. The notes included confidential information regarding Heringer's claim against Puklich.

During the next eighteen months, Horner did little work on the file. In August 1993, attorney Craig Boeckel contacted Horner expressing an interest in pursuing Heringer's claim. On August 27, 1993, Horner transferred the contents of his file to Boeckel and, in a cover letter, acknowledged that the firm of Smith, Horner & Bakke released its claim to attorney's fees generated by the file. Horner left the firm in December 1993.

Horner testified that, during the nineteen months between the January 7, 1992 meeting and the transfer of the file on August 27, 1993, the file would have been stored either behind his secretary's desk or in the firm's general file storage room. The other attorneys in the firm had access to the files stored in either area. Horner also testified that the partners occasionally discussed their cases with each other.

When Boeckel contacted Puklich about Heringer's claim, Puklich hired Bakke to represent him. The firm name had now changed to Smith, Bakke & Hovland [hereinafter "Smith firm"]. Boeckel advised Bakke that Horner's former representation of Heringer created a conflict of interest and requested that Bakke and the Smith firm decline representation of Puklich. Bakke and the firm refused, and Heringer made a motion to the trial court to disqualify them. Following a hearing, the court ruled that, although Horner had in fact represented Heringer in the same litigation and had received confidential and privileged information, Bakke, Smith, and the other attorneys in the Smith firm had not in fact received material information about the file. The court therefore denied the motion.

■ Heringer acknowledges that an order denying a motion to disqualify counsel is not immediately appealable. *See Allen v. White Drug of Minot, Inc.,* 346 N.W.2d 279, 282 (N.D.1984). Heringer therefore petitioned for a supervisory writ directing the district court to disqualify Bakke and the Smith firm.

■ This court's authority to issue a supervisory writ is derived from Article VI, Section 2 of the North Dakota Constitution. *Reems ex rel. Reems v. Hunke,* 509 N.W.2d 45, 47 (N.D.1993); *Odden v. O'Keefe,* 450 N.W.2d 707, 708 (N.D.1990). The power to issue a supervisory writ is discretionary with this court and cannot be invoked as a matter of right. *B.H. v. K.D.,* 506 N.W.2d 368, 372 (N.D.1993); *Odden, supra,* 450 N.W.2d at 708. Superintending control over inferior courts is used only to rectify errors and prevent injustice in extraordinary cases where no adequate alternative remedy exists.

*Reems, supra,* 509 N.W.2d at 47; *Odden, supra,* 450 N.W.2d at 708.

■ We believe this is an appropriate case to exercise supervisory jurisdiction. If the case is allowed to proceed to judgment before presentation of the issue, any divulgence of confidential client information and theories will have occurred, and it will be impossible to return the parties to the status quo. *See State ex rel. Freezer Services, Inc. v. Mullen,* 235 Neb. 981, 458 N.W.2d 245, 254 (1990). Review on appeal from the final judgment comes too late if the "cat"—the confidential information—is out of the bag and has been divulged to the court, the parties, and the public. *Cf. Reems, supra* [supervisory jurisdiction appropriate to review an order allowing discovery of documents prepared by a party's investigator].

Imputed disqualification of a law firm based upon a former firm member's representation of an adverse party is governed by Rule 1.10(c) of the North Dakota Rules of Professional Conduct:

"(c) When a lawyer has terminated an association with a firm, the firm may not thereafter knowingly represent a person when:

"(1) The person has interests materially adverse to those of a non-governmental client represented by the formerly associated lawyer;

"(2) The matter is the same or is substantially related to that in which the formerly associated lawyer represented the client; and

"(3) Any lawyer remaining in the firm has material information protected by Rule 1.6."

Our Rule 1.10 is adopted from the Model Rules of Professional Conduct developed by the American Bar Association.

■ The determination whether a firm is disqualified under Rule 1.10(c) is dependent upon the particular facts of the case, and the firm whose disqualification is sought bears the burden of proof. Comment to Rule 1.10(c), N.D.R.P.C.; *see also SLC Limited V v. Bradford Group West, Inc.,* 999 F.2d 464, 468 (10th Cir.1993) (applying Utah's Rule 1.10); *Pfarr v. Island Services*

*Co.,* 124 F.R.D. 24, 27 (D.R.I.1989); *Golleher v. Horton,* 148 Ariz. 537, 715 P.2d 1225, 1235 (Ct.App.1985); *Burnette v. Morgan,* 303 Ark. 150, 794 S.W.2d 145, 148 (1990). Any doubt must be resolved in favor of disqualification. *E.g., Brotherhood Mutual Insurance Co. v. National Presto Industries, Inc.,* 846 F.Supp. 57, 59 (M.D.Fla.1994); *Burkes v. Hales,* 165 Wis.2d 585, 478 N.W.2d 37, 41 (Ct.App.1991).

■ Disqualification under Rule 1.10(c) requires a three-step analysis: (1) Are the new client's interests materially adverse to the old client's interests? (2) Is the matter the same or substantially related to the prior representation? (3) Does any lawyer remaining in the firm have material information? It is conceded in this case that the first two requirements are present: Heringer and Puklich clearly have adverse interests, and Bakke seeks to defend Puklich in the very same litigation discussed by Horner and Heringer. The critical element at issue is whether Bakke or other lawyers in the Smith firm have confidential, material information.

■ Bakke asserts that lack of material information was established by his and Smith's affidavits asserting that they never discussed Heringer's case with Horner and that they never saw the file. However, it is not sufficient under Rule 1.10(c) to file affidavits alleging a lack of actual knowledge of the confidential client information. Rather, it must additionally be shown that no attorney remaining in the firm had *access* to the confidential information. The Comment to Rule 1.10 clarifies:

"Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the

files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients."

Cases interpreting Model Rule 1.10 and the Comment have acknowledged that the challenged attorney or firm must show a lack of access to the prior client's confidential information. *See, e.g., SLC, supra,* 999 F.2d at 468 ["imputed disqualification of a law firm is determined on the facts of the particular situation and is driven in part by the extent to which the attorney involved had access to information about his former client"]; *Parkinson v. Phonex Corp.,* 857 F.Supp. 1474, 1477 n. 4 (D.Utah 1994) ["it is appropriate to consider the reality of access to information in determining questions of disqualification"]; *Harris v. Agrivest Limited Partnership II,* 818 F.Supp. 1035, 1040 (E.D.Mich.1993) ["The reason for disqualifying a partner of a firm from performing work adverse to a former client of that firm is that because of that partner's access to information, he is imputed with all knowledge contained in the firm's files."]; *Clark v. Bank of New York,* 801 F.Supp. 1182, 1198–1199 (S.D.N.Y.1992) [access to confidential client information is imputed to other attorneys in the firm]; *Pfarr, supra,* 124 F.R.D. at 26 [" 'actual knowledge' depends upon the extent to which a lawyer had access to confidential information"]; *Golleher, supra,* 715 P.2d at 1235 [disqualification under Rule 1.10 is "primarily a factual question of access to information"]; *Burnette, supra,* 794 S.W.2d at 148 [when disqualification is sought under Rule 1.10, "the burden of proving not only a lack of knowledge but also a lack of access to information should rest with the challenged attorney"]; *State v. Early,* 70 Wash.App. 452, 853 P.2d 964, 965–966 (1993) [an attorney should be disqualified "when, even though the attorney did not represent the movant, he had access to ... material confidences"].

■ In this case, it is conceded that Bakke had general access to the file containing Heringer's confidential information for more than nineteen months, and that attorneys in the firm discussed pending cases. Under Rule 1.10(c), as explained in the Comment and interpretive case law from other Model Rules jurisdictions, such access equates with knowledge of the client's confidential information. Because Bakke had access to the confidential information, he is deemed to have material information under Rule 1.10(c)(3) and is therefore disqualified from representing Puklich in the litigation against Heringer.

■ Bakke stresses that the Rules of Professional Conduct have abandoned the "appearance of impropriety" standard that was the basis for the old Canons and Disciplinary Rules, in favor of a more flexible, fact-based approach. Although the new Rules do not use the language, the "appearance of impropriety" standard has not been wholly abandoned in spirit. *See, e.g., Brotherhood Mutual, supra,* 846 F.Supp. at 58–59; *Burnette, supra,* 794 S.W.2d at 148; *First American Carriers, Inc. v. Kroger Co.,* 302 Ark. 86, 787 S.W.2d 669, 672 (1990); *State Farm Mutual Automobile Insurance Co. v. K.A.W.,* 575 So.2d 630, 633–634 (Fla.1991); *Burkes, supra,* 478 N.W.2d at 43. Certainly concerns about the public's perception of the legal profession, particularly as it relates to confidentiality of client information, bears some relevance when we examine and interpret the Rules. We agree with the admonition given by the court in *Analytica, Inc. v. NPD Research, Inc.,* 708 F.2d 1263, 1269 (7th Cir.1983):

"While 'appearance of impropriety' as a principle of professional ethics invites and maybe has undergone uncritical expansion because of its vague and open-ended character, in this case it has meaning and weight. For a law firm to represent one client today, and the client's adversary tomorrow in a closely related matter, creates an unsavory appearance of conflict of interest that is difficult to dispel in the eyes of the lay public—or for that matter the bench and bar—by the filing of affidavits, difficult to verify objectively, denying that improper communication has taken place or will take place between the lawyers in the firm handling the two sides. Clients will not repose confidences in lawyers

whom they distrust and will not trust firms that switch sides as nimbly as [the firm in this case]."

See also Mustang Enterprises, Inc. v. Plug–In Storage Systems, Inc., 874 F.Supp. 881, 888–889 (N.D.Ill.1995); Penn Mutual Life Insurance Co. v. Cleveland Mall Associates, 841 F.Supp. 815, 818 (E.D.Tenn.1993); State ex rel. FirsTier Bank v. Buckley, 244 Neb. 36, 503 N.W.2d 838, 844 (1993); State ex rel. Freezer Services, supra, 458 N.W.2d at 254; Berg v. Marine Trust Co., 141 Wis.2d 878, 416 N.W.2d 643, 649 (Ct.App.1987).

In this case, the trial court expressed its belief that the "person on the street" would not find representation in these circumstances objectionable. From our perspective, however, we believe the "person on the street" would view a law firm "switching sides" in the middle of a dispute to be highly objectionable. A layperson typically will not bother with the finer points of access versus knowledge, or attempts to shield attorneys within the same firm from confidential information. Rather, the layperson's view is simple: the firm represented one side of the lawsuit and now wants to represent the other side. In this instance, the simplistic view is also the correct one. In order to preserve public confidence in the legal profession, and to insure the confidentiality and integrity of client information, the firm must not be allowed to "switch sides" when attorneys remaining in the firm had access to the former client's file.

We are also mindful of the nature of private law practice in this state. We do not have large firms with hundreds (or even dozens) of lawyers in various firm groups or sections, working in different buildings or different cities. In such cases, it may be common for the firm's attorneys to not discuss their cases or have general access to all of the firm's files. This case, however, involves a three-person law firm which admittedly had no policy or other safeguards to restrict access to files and information among the attorneys. Furthermore, as is what we believe to be the common experience in North Dakota law firms, it was not uncommon for these attorneys to discuss their cases with each other. Under these circumstances, it is reasonable and justified to infer that each attorney had access to, and therefore knowledge of, all confidential information of the firm's clients.

We conclude that disqualification of Bakke and the Smith firm is required by Rule 1.10(c). We direct the district court to disqualify Bakke and the Smith firm from representing Puklich in this litigation, and to take such further action as is necessary to assure that confidential information is not relayed to Puklich's subsequent counsel.

VANDE WALLE, C.J., and NEUMANN, SANDSTROM and MESCHKE, JJ., concur.