Patrick **FALVEY,**

v.

**A.P.C. SALES CORP.;** Gaines Automotive Corp.; Laredo Coach Works, Inc.; Bedford Appleton Corp.; Bowling Brook Lincoln–Mercury, Inc.; Ford Motor Company, Inc.

C.A. No. 98–349L.

United States District Court, D. Rhode Island.

March 12, 1999.

McKinnon & Harwood, by Joseph P. Marasco, Pawtucket, RI, for plaintiff.

Hodosh, Spinella & Angelone, by Thomas C. Angelone, Providence, RI, for defendant.

## MEMORANDUM AND ORDER

LOVEGREEN, United States Magistrate Judge.

Plaintiff, Patrick Falvey ("Falvey"), has moved for the disqualification of the law firm of Hodosh, Spinella & Angelone which is serving as counsel for defendant, Laredo Coach Works, Inc. ("Laredo"). Laredo objected and a hearing was held on February 8, 1999. Subsequently, on March 1, 1999, testimony was taken on the issue of what legal work was performed for plaintiff by Attorney Keith Kyle and whether that legal work was material.

Falvey brought this personal injury action against these defendants as a result of injuries suffered in a single motor vehicle incident. Falvey was a passenger in the rear seat of a stretch limousine when the rear axle locked causing the vehicle to stop quickly, propelling Falvey into the glass partition separating the passenger and driver's areas, and into the wood bar in the passenger's section, thereby causing injury to his person. The vehicle was a Lincoln Town car manufactured by defendant, Ford Motor Company. The vehicle was customized into a stretch limousine by Laredo, located in Texas.

On February 5, 1996, Falvey, a Rhode Island resident, retained the law firm of McKinnon & Harwood, located in Pawtucket, Rhode Island, to represent him in his claim against these defendants. At the time, partners in that law firm included Daniel V. McKinnon, John B. Harwood and Joseph P. Marasco. Subsequently, on August 5, 1996, attorney Stephen Maguire became associated with the firm and on January 20, 1997, attorney Keith Kyle became associated with the firm.

The parties dispute the role of attorney Kyle in the Falvey matter. The affidavit of attorney McKinnon states that attorney Kyle was employed by the law firm McKinnon & Harwood from January 20, 1997 until February 6, 1998 and that attorney Maguire was so employed from August 5, 1996 until May 22, 1998. Both terminated their employment with McKinnon & Harwood to enter the employ of another law firm, Hodosh, Spinella & Angelone. The McKinnon affidavit states that while Kyle and Maguire were employed at McKinnon & Harwood, they, individually and collectively, actively participated in the handling of the Falvey matter and obtained material information concerning the Falvey claim. The Falvey complaint was filed in this court on July 2, 1998, after both Kyle and Maguire had left McKinnon & Harwood. However, McKinnon states that while Kyle was at McKinnon and Harwood, he participated in at least:

(a) office conferences when various legal theories, both advantageous and problematic, were discussed;

(b) office conferences when various and diverse "fact patterns" were discussed;

(c) office conferences when settlement and/or trial strategy was discussed;

(d) office conferences when the subject of needed expert testimony was discussed;

(e) office conferences when the identification of potential expert witnesses took place and the predicates upon which the persons would testify.

Attorney Maguire's role in the Falvey matter is not detailed in the McKinnon affidavit but is described as "actively participated, in a major fashion, in the handling of this file." McKinnon Aff. at 2, ¶ 9.

Attorney Kyle also presented an affidavit wherein he described his role in the Falvey

matter as being limited to giving a form product liability complaint to attorney Marasco and providing the name of a potential expert witness. He stated further that he was not a principal attorney on the Falvey matter, that he neither represented nor met Falvey, that he had no knowledge as to Falvey's claimed injuries, and that when he left the employ of McKinnon & Harwood he prepared transfer memoranda on all files he handled and the Falvey file was not among them.

After the Falvey complaint was served upon Laredo, the defense of that matter was tendered to the firm of Hodosh, Spinella & Angelone, specifically attorney Thomas C. Angelone. Attorney Angelone contacted attorney Marasco before answering the complaint and, among other issues, discussed the representation of Laredo by attorney Angelone. Attorney Angelone stated at oral argument that, at that time, attorney Marasco had no problem with his representing Laredo as attorney Kyle had no part and would have no part in Laredo's defense. Attorney Marasco's recollection of this conversation is somewhat different, but certainly no objection was raised at that time. Laredo waived any defense of lack of personal jurisdiction and the matter proceeded with discovery.

Sometime in December 1998, Marasco specifically put the conflict problem to Falvey who insisted that his counsel move to disqualify the firm of Hodosh, Spinella & Angelone. Apparently, Falvey was unaware of the potential problem until that time, and when he learned of the circumstances, he requested the motion for disqualification be pressed. Acting on that basis as counsel are obligated to do provided there is merit in the client's position, attorney McKinnon wrote a letter to attorney Angelone which acknowledged that initially the firm of McKinnon & Harwood had no objection to attorney Angelone's representation of Laredo provided a "Chinese Wall" was placed between attorney Angelone and attorney Kyle. No mention of attorney Maguire was made. However, the climate had now changed as the client was "uncomfortable" with this arrangement and wanted attorney Angelone removed as defense counsel for Laredo. Attorney Ange-

lone was requested to withdraw his appearance for Laredo and transfer the matter to new defense counsel. When that did not occur, this motion for disqualification was filed.

At the hearing on March 1, 1999, attorney Marasco testified that he had reviewed the Falvey file kept at the McKinnon & Harwood firm and located a handwritten memorandum dated February 21, 1997 prepared by attorney Kyle for attorney Marasco concerning a telephone conference attorney Kyle held with an operator of a local limousine service regarding the "stretching" of a Lincoln Town car into a limousine. This memorandum confirmed information contained in a November 26, 1996 letter to attorney Marasco from Laredo's insurance carrier which was that, during the "stretching" process, the rear axle of the vehicle is untouched.

The Falvey file revealed no further memoranda from attorney Kyle, but there were several memoranda from attorney McKinnon to attorneys Marasco, Kyle and Maguire requesting status information, setting deadlines and requesting further preparatory action be taken on the file. A memorandum dated July 21, 1997 from attorney Marasco to attorney McKinnon mentions a meeting between attorney Marasco, attorney Kyle, attorney Maguire and the potential expert, Dennis Lyons. That meeting occurred on July 18, 1997 and lasted approximately two hours. It was arranged by attorney Kyle as he was familiar with Lyons, having used him as an expert in another matter, and was designed to determine if Lyons was an appropriate expert. There is some dispute as to what occurred at that meeting. Attorney Marasco stated that Lyons gave a preliminary opinion as to what he believed caused the accident and who was responsible. He was given information earlier obtained from an expert auto mechanic. Also, Lyons was shown repair invoices for the vehicle, information from Laredo concerning the "stretching" process and perhaps a schematic of the differential and differential housing of the Lincoln Town car. Attorney Marasco also testified that attorney Kyle was privy to the opinions of other experts (auto mechanics) although he did not attend any other meetings with experts. This is because attorney Marasco

would talk with attorney Kyle informally and periodically about the Falvey matter and its issues and progress. Subsequent to this meeting, attorney Marasco prepared a memorandum dated July 22, 1997 to attorney McKinnon advising of the Lyons meeting and the result. That memorandum relates, *inter alia*, a preliminary opinion given by Lyons at the meeting.

Attorney Marasco also testified that he was the lead attorney on the Falvey file and attorney Kyle and attorney Maguire were assisting. Attorney Kyle assisted on establishing the fact pattern, i.e., what happened, obtain an expert, determine the defect. Every attorney in the office except attorney Harwood worked on the file. At various intra-office conferences among the attorneys, all aspects of the case were discussed including damages.

Attorney Marasco testified that his firm obtained extensive medical records concerning Falvey's injuries and copies were produced to defense counsel including attorney Angelone. Attorney Kyle did not confer with the doctors, but he was aware of the medical information as this was discussed at the various conferences between counsel. Also, attorney Kyle's time records as to the Falvey file were introduced, but were not extensive or complete as this matter was taken on a contingent fee basis. These records disclosed two telephone conferences and one meeting with the expert, Lyons; one conference with attorney Marasco; one conference with attorney McKinnon; and one telephone conference with a local limousine service.

Attorney Kyle also testified and stated that the July 18, 1997 meeting with Lyons did not result in any preliminary opinion as Lyons had not then examined the vehicle; that he never spoke with Falvey; that he never prepared a transfer memorandum upon leaving the McKinnon & Harwood firm as the Falvey file was not his nor was he secondarily involved. He has no recall of any formal conferences with counsel at the McKinnon & Harwood firm or of any assignment on the issue of liability. Attorney Kyle denied any receipt of privileged material, any knowledge of Falvey's injuries and any day to day involvement in the Falvey matter. He

did admit to assisting in obtaining an expert (Lyons) and told him generally about the matter and the involvement of a limousine. Lyons was informed by attorney Kyle that the accident had something to do with a rear axle and what was believed to be the problem. But Lyons did not provide an in-depth analysis at the July 18, 1997 meeting. Basically, Lyons stated what he needed to do and the cost. Attorney Kyle reiterated that he had no recall of any formal conference with attorney Marasco and no recall of any discussions with Marasco or others (especially medical doctors) concerning the Falvey file. He denied that he showed any photographs to Lyons either before or at the July 18, 1997 meeting.

Significantly, the Falvey file contained correspondence dated January 2, 1998 from Lyons to attorney Kyle and correspondence dated June 11, 1998 to attorney Marasco. Also, on September 9, 1997, Lyons had invoiced attorney Kyle for $187.50 as compensation for the July 18, 1997 meeting "Re: Lincoln limousine rear differential failure." The January 2, 1998 correspondence inquired of attorney Kyle why payment had not yet been received and again referenced "We discussed the differential failure that occurred in the Lincoln limousine." The June 11, 1998 correspondence again inquired about payment of the invoice and stated "Keith Keil (sic) hired me as an expert to review photographs, service invoices, and statements regarding a mechanical failure that occurred in the rear differential of a Ford limousine. There was never a discussion to the effect of the possibility of retaining my firm to provide expert analysis and testimony. The expert analysis was provided for you during that meeting. Under no circumstances do I offer my expert opinion with an in-depth analysis of an accident or mechanical failure without charging my hourly rate."

Some facts are not disputed. Attorney Maguire was assigned the responsibility of determining whether Rhode Island courts had personal jurisdiction over Laredo. Certain questions were raised as to personal jurisdiction as the accident happened in New York, the place of manufacture of the vehicle was Michigan, and the vehicle was custom-

ized at Laredo's plants in Texas and Mexico. However, Laredo has not raised lack of personal jurisdiction as a defense. Consequently, Falvey is not basing his motion for disqualification on any information learned by attorney Maguire. Also, there is no evidence or allegation of wrongdoing by attorney Kyle. Any dispute on the facts is due to a lack of recall, bearing in mind that attorney Kyle left the McKinnon & Harwood firm February 6, 1998 and has had no opportunity to review the Falvey file since that date. Further, there is no dispute that attorney Kyle has played no role in attorney Angelone's defense of this matter for Laredo and there has been a "Chinese Wall" between attorney Angelone's file and attorney Kyle.

### Discussion

In support of his position, Falvey relies upon the Rules of Professional Conduct adopted and applied by the Rhode Island Supreme Court and by this Court. *See* Local Rule 4(d)[1]. In particular, Falvey relies on Rules 1.9 and 1.10 which state:

**Rule 1.9 Conflict of interest: Former client.**

A lawyer who has formerly represented a client in a matter shall not thereafter:

(a) represent another person in the same or substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client or when the information has become generally known.

**Rule 1.10. Imputed disqualification: General rule.**

(a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing

alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9 or 2.2.

(b) When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

(c) When a lawyer has terminated an association with a firm, the firm is not prohibited from thereafter representing a person with interests materially adverse to those of a client represented by the formerly associated lawyer unless:

(1) the matter is the same or substantially related to that in which the formerly associated lawyer represented the client; and

(2) any lawyer remaining in the firm has information protected by Rules 1.6 and 1.9(b) that is material to the matter.

(d) A disqualification prescribed by this rule may be waived by the affected client under the conditions stated in Rule 1.7.

■ "[I]mputed disqualification of a law firm is determined on the facts of the particular situation and is driven in part by the extent to which the attorney involved had access to information about his former client. Thus, although the burden remains with the firm whose disqualification is sought, a firm is disqualified only when the attorney involved had actual knowledge of material information protected by Rules 1.6 and 1.9(b)." *SLC Ltd. v. Bradford Group West, Inc.,* 999 F.2d 464, 468 (10th Cir.1993).

Rule of Professional Conduct 1.6 states:

**1.6 Confidentiality of information.**

(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation,

---

1. The Rhode Island Supreme Court adopted the Rules of Professional Conduct on November 1, 1988 to apply prospectively as of November 15, 1988. *See Pfarr v. Island Services Co., Inc.,* 124 F.R.D. 24, 27 (D.R.I.1989). These Rules are implemented by Rhode Island Supreme Court

Rule 47. This Court's Local Rule 4(d) states: "The Code of Professional Responsibility of the Rhode Island Supreme Court shall be the standard of conduct for all attorneys practicing before this court."

except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph (b).

(b) A lawyer may, but is not obligated to, reveal such information to the extent the lawyer reasonably believes necessary:

(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client.

An individual attorney has a continuing duty of loyalty to his former client which may prevent taking an adverse position, but this may not extend to his new firm as a whole. *Id.* Indeed, the Comment to Rule 1.10 includes:

> [T]he rule of disqualification should not unreasonably hamper lawyers from forming new associations and taking on new clients after having left a previous association. In this connection, it should be recognized that today many lawyers practice in firms, that many to some degree limit their practice to one field or another, and that many move from one association to another several times in their careers. If the concept of imputed disqualification were defined with unqualified rigor, the result would be radical curtailment of the opportunity to lawyers to move from one practice setting to another and of the opportunity of clients to change counsel.

█ In *Graham v. Wyeth Laboratories*, 906 F.2d 1419, 1422 (10th Cir.1990), the court stated that Rule 1.10(b) applies when disqualification of the moving lawyer's new firm is sought and established four factors to be considered in determining whether an attorney and his new firm should be disqualified. A lawyer's new firm is disqualified when: "(1) the moving lawyer, or his or her prior firm, had represented a client whose interests are materially adverse to the client at the new firm; (2) the matter in the new firm is the same or substantially related to the previous representation; (3) the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter in the new firm; and (4) the new firm knows of the conflict arising from its representation." *Id.*

█ If, following a hearing, the court is convinced that the moving attorney gained information at his or her previous firm that is material and confidential, then the moving attorney and the new firm are disqualified. *Parker v. Volkswagenwerk Aktiengesellschaft*, 245 Kan. 580, 781 P.2d 1099, 1106 (1989). The Rules of Professional Conduct reject any attempt to cure the taint of the moving lawyer by screening him or her out of the affected client's matter, or by erecting a "Chinese Wall" or by silencing the moving lawyer. *Id.*

█ Turning here to the four factors, it is clear that elements (1), (2) and (4) are undisputed. Attorney Kyle worked on Falvey's matter while at McKinnon & Harwood, the same matter came to attorney Kyle's new firm for defense of one of the named defendants, and the new firm, Hodosh, Spinella & Angelone, was aware of the conflict and had imposed a "Chinese Wall" between attorney Kyle and the Laredo file. What remains is a discussion as to whether attorney Kyle acquired material information in the Falvey matter at his old firm which is protected by Rules 1.6 and 1.9(b). "Rule 1.6 prohibits revelation without consent of 'information relating to representation of a client,' while Rule 1.9(b) prohibits its use to a former client's disadvantage." *Id.* at 1423.

> The Comment to Rule 1.10 states in part:
> Preserving confidentiality is a question of access to information. Access to information, in turn, is essentially a question of fact in particular circumstances, aided by inferences, deductions or working presumptions that reasonably may be made about the way in which lawyers work together. A lawyer may have general access to files of all clients of a law firm and may regularly participate in discussions of their

affairs; it should be inferred that such a lawyer in fact is privy to all information about all the firm's clients. In contrast, another lawyer may have access to the files of only a limited number of clients and participate in discussion of the affairs of no other clients; in the absence of information to the contrary, it should be inferred that such a lawyer in fact is privy to information about the clients actually served but not those of other clients.

Here, the testimony from attorney Marasco is that attorney Kyle played a substantial role in the Falvey matter while at McKinnon & Harwood. He was assigned the task of researching the liability issues; he was privy to a meeting with the proposed expert and listened to the expert's analysis of what happened and why; he participated in formal and informal discussions on the file involving various aspects of the claim; he spoke with another limousine service to gather information on customizing a vehicle into a limousine; and he participated in conferences on this matter with all counsel in the firm except attorney Harwood. In contrast, attorney Kyle recalls only that he provided attorney Marasco a form product liability complaint; that he arranged a meeting with an expert he had used in another matter and attended that meeting at which no opinion on liability was given by the proposed expert; and he spoke with a limousine service and reported his information to attorney McKinnon. In his affidavit, attorney Kyle stated he did not consider himself a principal attorney on the Falvey matter; he never spoke with the client; he had no knowledge of Falvey's injuries; and he never prepared a transfer memorandum in the Falvey matter when he left as he did not believe he "handled" that matter.

Of great significance is the correspondence from the expert, Dennis Lyons. *See* Exhibit C. He states that attorney Kyle "hired" him as an expert to review photographs, service invoices and statements regarding a mechanical failure that occurred in the rear differential of a limousine. Presumably, attorney Kyle had access to those photographs, invoices and statements. Further, Lyons stated that his expert analysis was provided at the July 18, 1997 meeting at which attorney Kyle was present. Lyons described this as "an in-depth analysis of an accident or mechanical failure" and attorney Kyle would have heard all of it.

In all fairness to attorney Kyle, he has not had a chance to review the Falvey file kept at McKinnon & Harwood during the past year and his memory of his role may have dimmed over that time frame. But it is clear from this record that he obtained material and confidential information on the Falvey file while employed at McKinnon & Harwood. Even if this was a close call or an evenly balanced record, "[a]ny doubt must be resolved in favor of disqualification." *Heringer v. Haskell,* 536 N.W.2d 362, 365 (N.D.1995).

I conclude that the disqualification of attorney Kyle's new firm, Hodosh, Spinella & Angelone, is required by Rule 1.10(b). Attorney Kyle did obtain information at McKinnon & Harwood that was protected by Rules 1.6 and 1.9(b). Consequently, plaintiff's motion for disqualification is granted. The firm of Hodosh, Spinella & Angelone is disqualified and the defense of Laredo is to be transferred to new defense counsel.

So ordered.